**Jack G. PARK, Appellant,**

v.

**ESSA TEXAS CORPORATION et al.,
Appellees.**

**No. 10589.**

Court of Civil Appeals of Texas.

Austin.

June 18, 1958.

Rehearing Denied July 16, 1958.

See also 311 S.W.2d 228.

John C. Butler, L. Hamilton Lowe, Archer & Archer, Austin, for appellant.

Hart, Brown, Sparks & Erwin, James P. Hart, Austin, for appellees.

GRAY, Justice.

The question presented by this appeal is the enforcement of a negative covenant contained in an employment contract.

On February 10, 1954, appellant entered into a contract with appellee, The Askin Stores, Inc., and thereafter on January 26, 1955, he entered into a second contract with the Askin Stores, Inc., as agent for appellee, Essa Texas Corporation. By each of the contracts appellant was employed as Manager of a credit clothing store located in the City of Austin. The contracts are in all material respects identical and have reference to the same store although its ownership is different. In each contract appellant is designated as "Manager" and appellee as the "Corporation." We are here concerned with the second contract and we quote its portions that are material here.

"3. The Manager shall take inventory of the stock and assets of the said store at such times as are designated by the Corporation, and shall also keep account of all payments from customers. If any deficiency in stock occurs, of if any payments received from customers are not fully acounted for, the Manager shall reimburse the Corporation for the cost price of such stock, and for the amount of all payments received from customers and not fully accounted for. Reimbursement shall not be required, however, if the Manager shall furnish absolute proof that the deficiency in stock or the cash unaccounted for results from theft other than theft by persons employed in or about the Corporation's store, unless such loss results from the Manager's negligence or his failure to comply with the instructions of the Corporation. In addition to all other remedies, the Corporation may, to the fullest extent permitted by law, deduct the amount of any such reimbursement to which it is entitled from amounts due from it to the Manager for compensation or otherwise.

"7. (a) The Corporation has represented to the Manager, and the Manager acknowledges, the following:

"(i) The Corporation, as a result of successful business operations and a substantial outlay of moneys, has developed valuable good will and earning power:

"(ii) The Manager will acquire, because of the confidential relationship existing between the parties, valuable information and skill with respect to the successful business operations of the Corporation, such as information and skill relating to merchandise methods, customer's lists, statistical credit data, forms of agreements and contracts used in the operation of the Corporation's business, and methods of collection of accounts; and

"(iii) The Corporation will suffer irreparable injury if any such methods, lists, data or forms are obtained by any other person, firm or corporation or used in competition with the Corporation.

"(b) The Manager represents that his experience and abilities are such that he can obtain employment in business different in nature from the business of the Corporation, and that he can obtain employment and would be willing to obtain employment in towns or cities other than those in which the Corporation conducts any of its business operations.

"9. In view of the representations and acknowledgments contained in subparagraphs 7(a) and (b), the Manager covenants that after termination of his employment with the Corporation for any reason whatsoever, he will not, directly or indirectly, for a period of two (2) years from the date of such termination (or if this period shall be unenforceable by law, then for such period as shall be enforceable) enter the employ of, or become interested or affiliated or in any manner connected with any men's and/or women's apparel

business, the sales of which are made primarily on credit, in, or within 15 miles of the city of Austin, Texas."

Appellant continued in his employment until on or about February 14, 1957, at which time he resigned and went to Kingsville as Manager of a clothing store there. He returned to Austin about June, 1957, and entered into a partnership for the purpose of engaging in a credit clothing business in Austin, the store to be named "Parks Credit Clothiers" and located three blocks from appellees' store. Upon learning of appellant's intention appellees notified him that they would insist on their rights under the above contract. Appellant then filed his suit attacking the validity of the contract, appellees filed their cross action to enforce it and prayed for a permanent injunction restraining appellant from violating it.

A jury trial was had on appellees' cross action and at the conclusion of the evidence the trial court granted appellant's motion praying that the cause be withdrawn from the jury and that a judgment as prayed for be granted. A judgment was rendered adjudging the contract to be valid and enjoining appellant from engaging in the credit clothing business within fifteen miles of the City of Austin for a period of two years from February 14, 1957.

Appellant here presents three points. These are to the effect that the trial court erred: (1) in taking the case from the jury; (2) in holding that the evidence conclusively established the validity and enforceability of the contract, and (3) in holding that there was no evidence showing a breach of the contract by appellees.

Appellant argues that the evidence raised issues of fact on the following propositions:

"1. The reasonableness of and the necessity for the covenant not to engage in a competing business; and

"2. The breach of the contract by the Employers whereby the Employee was released from the obligations imposed by the negative covenants."

For many years appellant had worked in credit clothing stores and prior to coming to Austin he had been manager of such stores in Dallas, Fort Worth and Corpus Christi. In 1947 he came to Austin as Manager of Lacy's Credit Clothiers and continued as such Manager until 1954, when that store was purchased by appellees and the first contract supra was entered into. Thereafter the second contract was entered into and the operation of the store was continued at the same location until appellant resigned February 14, 1957. During the three years that appellant managed the store he had general supervision over it and the employees. He kept his desk at the front of the store in view of the customers as they entered and it was a part of his duties to greet them. He generally supervised the making of sales and at times made sales himself. The business of the store was principally a credit business and appellant supervised the granting of credit to customers. He thus had opportunity to not only make acquaintances but to build up the goodwill of the store and to establish his friendly business relations with the customers of the store. Proof of these facts is shown by the growth of the business.

Prior to appellant's resignation he was charged with a shortage of $62.22. The matter is perhaps best explained by the following letter to appellant:

"Reference is made to the Daily Store Summary of November 3, 1956 line 15.

"The expenses for Saturday amounted to $319.70.

"The expenses for the whole week (including Saturday) amounted to $381.92.

"On the Daily Store Summary for Saturday November 3rd—line 15 you should have entered just the expenses for that day namely $319.70 instead you entered $381.92. This resulted in a shortage in the cash of $62.22 which amount you will of course make good by adding that sum to your next

deposit. Please let me know when you make that additional deposit.

"By over-stating the expenses in error your cash draw for November 3rd should thus have been over $62.22 and that overage shown on the daily report. This was not done."

In Ofsowitz v. Askin Stores, Inc., Tex. Civ.App., 306 S.W.2d 923, 924, Er. ref., it is said that the general rule:

" * * * is that an employee's covenant not to engage in competing business against his employer after the termination of his employment contract, may be enforced if the restriction is reasonable in respect to the time it imposes, the territory it embraced and is reasonably necessary to protect some legitimate interest of the employer in the operation of his business."

The Supreme Court has held (Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S.W.2d 798) that the rule applies without distinction between professions and other occupations; that three years was a reasonable time and that the County of Lubbock was a reasonable territory. We therefore hold without further discussion that the restrictions of the contract before us are reasonable as to time and territory.

We think the facts compel the conclusion that appellant's past experiences as Manager of credit clothing stores and especially his experience in Austin as Manager of Lacy's and then appellees' store made him thoroughly familiar with the credit clothing business in Austin and the surrounding territory as well as with the customers of that business. The fact that appellees' business grew under appellant's management is not a disputed issue, neither is it disputed that the customers were drawn from the City of Austin and surrounding towns and communities. Thus the goodwill of appellees' store and the acquaintance with its customers were valuable assets of the store.

Appellant testified that he expected to draw business to his new store from the City of Austin and from the surrounding towns and communities.

The trade territory of the stores of appellees and appellant was the same, the business was the same and therefore the two stores catered to the same customers. This being true and with appellant's experience and acquaintance together with his expressed intention would make it most likely and probable that appellees' customers, or at least some of them, would follow appellant to a new store under his name and at a location only three blocks from appellees. This of course would result in injury to appellees and would adversely affect their business interests, the protection of which was the purposes of the contract.

Appellees having discharged their burden of showing that the contract was reasonable and that it was necessary to protect their business interests, and the evidence having conclusively established these facts points (1) and (2) supra do not present error.

Appellant complains that he was required to pay a shortage of $62.22 in the accounts of the store and that such requirement constituted a breach of the contract by appellees. By the plain terms of the contract (paragraph 3) he was obligated and bound to pay this shortage as it was money received and "not fully accounted for." Appellant did not attempt to show that the shortage resulted from theft as provided for in paragraph 3. Even if, as is asserted by appellant, appellees resorted to the means afforded by the contract to enforce collection they merely exercised a right secured to them by the contract and appellant is not in position to escape the obligations of his contract merely because appellees collected an account that they had a contract right to collect. Point (3) is overruled.

The judgment of the trial court is affirmed.

Affirmed.