

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00297-CV

CONCORD MEDICAL GROUP, INC., APPELLANT

V.

DALLAM-HARTLEY COUNTIES HOSPITAL DISTRICT, APPELLEE

On Appeal from the 69th District Court
Hartley County, Texas
Trial Court No. 4712H, Honorable Ron Enns, Presiding

November 24, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Concord Medical Group, Inc. (Concord) sued Dallam-Hartley Counties Hospital District (the Hospital) for breach of contract. The two entities had contracted for Concord to provide the Hospital with emergency room physicians. The contract contained a provision restricting the Hospital's ability to allow the physicians to "work" with the Hospital "independent" of Concord. Once that agreement ended, the three physicians provided by Concord later appeared at the Hospital to perform emergency room services and did so via a different contract executed between the Hospital and a third party. This circumstance allegedly constituted a breach of the aforementioned

restriction. Cross motions for summary judgment were filed. The trial court denied that of Concord but granted that of the Hospital. In granting the latter, the trial court decreed that Concord take nothing from the Hospital. Concord appealed, contending that the trial court erred in granting the summary judgment.[1] We reverse.

The motion for summary judgment here was traditional in nature. Thus, the burden lay with the movant (that is, the Hospital) to prove its entitlement to same as a matter of law. *Cantey Hanger, LLP. V. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). Furthermore, only two grounds were mentioned by the Hospital as basis for summary judgment.[2] One involved the allegation that the Hospital did not "employ" the physicians once they left Concord. The other involved the proposition that the restriction was unenforceable per *Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d 657 (Tex. Civ. App.—San Antonio 1975, writ refd n.r.e), since it "serve[d] no legitimate purpose other than to eliminate competition between Concord and ESS."[3]

The trial court did not specify the ground upon which it relied in granting the motion. Thus, we must determine whether either supported the decision. *See Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 216 (Tex. 2003) (stating that "[b]ecause the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the

---

[1] Concord does not contend, on appeal, that the trial court erred in denying it's motion for summary judgment.

[2] The Hospital also asserts on appeal that summary judgment was warranted because the covenant expired when the contract between Concord and the Hospital ended. Because this ground was not mentioned in its summary judgment motion, we cannot consider it as basis to affirm the trial court's judgment. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010) (stating that a "[s]ummary judgment may not be affirmed on appeal on a ground not presented to the trial court in the motion.").

[3] ESS was the entity with which the Hospital contracted to supply doctors after the Concord arrangement ended.

trial court and preserved for appellate review are meritorious."). The first to be addressed is that concerning whether the Hospital employed the physicians.

We assume *arguendo* that the Hospital established as a matter of law that it did not employ the three doctors once they left Concord. Yet, that is of no consequence. The contractual restriction at issue stated:

> 6.3 Non-Competition Covenant. Should a Practice Providers [sic] in collaboration with Hospital elect *to work* in the Hospital or clinic, independent of the Practice, Hospital agrees to pay Practice the sum of twenty thousand dollars ($40,000). However, Hospital shall not contact providers *regarding employment or contract services* without the prior expressed written consent of Concord Medical Group.

(Emphasis added). As argued by Concord below, it does not simply encompass the employment of "Practice Providers" (that is, the doctors provided by Concord). Rather, it mentions "work" performed in the Hospital, and it is quite conceivable that the doctors could be considered as working there even if they had no employment relationship with the Hospital. For instance, "work" commonly connotes such things as 1) "activity in which one exerts strength or faculties to do or perform something," 2) "sustained physical or mental effort to overcome obstacles and achieve an objective or result," and 3) "the labor, task, or duty that is one's accustomed means of livelihood." *Work Definition*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/work (last visited November 17, 2015); *see also*, *Plains Exploration & Prod. Co. v. Torch Energy Advisors Inc.*, No. 13-0597, 2015 Tex. LEXIS 558, at *21-22 (Tex. June 12, 2015) (obligating us to assign the words of a contract "their plain, common, or generally accepted meaning unless the contract shows that the parties" intended otherwise). Expending strength or faculty to perform something or engaging in physical or mental effort to achieve a result or engaging in labor that is one's livelihood is not necessarily

3

dependent upon an employment relationship. Indeed, it could be said that the physicians who contracted with Concord to perform emergency room services for the Hospital were not the employees of the Hospital but, nonetheless, "worked" there.

Our interpretation of the clause as encompassing more than employment by the Hospital is further buttressed by other language in the clause itself. Its second sentence barred the Hospital from contacting the physicians about "employment or contract services" without first getting the approval of Concord. By mentioning both "employment" and "contract services," the parties to the agreement must have intended that something more than the mere "employment" of the doctors by the Hospital was contemplated. To hold that the terms mean the same thing (that is, both meaning employment) would be to erase the phrase "contract services" from the contract. That we cannot do since our duty is to assign meaning to each word of the agreement. *See id.* at *21-22 (discussing the rules of construction pertinent to interpreting a contract and stating that "we consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless.").

So, by using "employment," "contract services," and "work" in the clause, we cannot but hold that the provision restricts the Hospital from doing more than just employing the doctors. As a result of that, the Hospital's effort to show that it did not employ the doctors failed to prove, as a matter of law, that it did not breach the contract.

As for the second ground alleged in the motion for summary judgment, the Hospital argued that because the *Potyka* court held unenforceable a purportedly similar covenant, the covenant here should also be held unenforceable. To best address the contention we turn to that opinion and the circumstances involved.

4

In *Potyka*, the hospital (Baptist) contracted with Bobbitt to provide the needed physicians, and their contract contained a provision stating that:

> So long as an Emergency Room Physician is under contract with [Bobbitt] to provide professional services in the emergency room of any hospital, and for a period of three (3) years thereafter, Baptist and/or Hospitals shall not contract with said Emergency Room Physician to otherwise perform professional services in the emergency room of any Hospital, or allow said Emergency Room Physician to provide professional services in the emergency room of any Hospital, except as provided for in his contract with [Bobbitt]. It is understood that the foregoing provisions are for the protection of the rights of [Bobbitt] and are not intended to restrict the rights and privileges of a physician to become an active member of the medical staff of any Hospital after ending his contractual relationships with [Bobbitt].

*Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d at 659 (emphasis added). Furthermore, a doctor, Crow, contracted with Bobbitt to perform emergency room services, but not at Baptist. Eventually, Bobbitt and Baptist parted ways. After that occurred, Crow associated with another entity that provided services similar to Bobbitt, and that service then contracted with Baptist. However, Baptist refused to accept Crow as the physician assigned to the hospital because of the above mentioned covenant with Bobbitt. That led Crow to sue Baptist and Bobbitt for a declaration that the covenant was unenforceable. The trial court, after a jury trial, entered a judgment finding the covenant to be unenforceable, and that judgment was affirmed on appeal.

In affirming the decision, though, the appellate court stated that *"[i]n the absence of facts* making the 'customer contact' theory applicable or showing a breach of trust or confidence arising from improper use by Crow of Bobbitt's trade secrets, customer list, etc., enforcement of the Bobbitt-Baptist covenant would only have the effect of insulating Bobbitt against competition by Emergency Room Affiliates."[4] *Id.* at 665

---

[4] Emergency Room Affiliates was the entity with which Baptist contracted to provide emergency room physicians once the contract with Bobbitt ended.

(emphasis added). From this language we observe that the outcome in *Potyka* was rather fact dependent or situational. In other words, the various categories of missing information compelled the result. The result was not compelled by some *per se* rule rendering unenforceable all covenants like that dealt with in *Potyka*, as the Hospital seems to suggest here. And, given that the Hospital filed a traditional motion for summary judgment, it had the burden to prove its entitlement to judgment as a matter of law. Satisfying that burden would necessarily include the obligation to prove that the same categories of pivotal information found missing in *Potyka* was also missing here before one could reasonably deduce that the *Potyka* holding controlled our situation. But, the Hospital did not attempt to do that.

Also of import to the court in *Potyka* was the fact that the covenant barred Baptist from using the services of Crow even though Crow had not worked previously at Baptist. *Id.* "It requires great imagination to understand how a physician assigned to another hospital and who had had no association whatever with Baptist, would be in a position to take advantage of the fact that he had been assigned to such other hospital in order to induce Baptist to 'eliminate' Bobbitt," stated the *Potyka* panel. *Id.* At bar, each physician apparently worked at the Hospital under the latter's contract with Concord.

We further observe that unlike the clause in *Potyka*, the covenant here did not bar the Hospital from using the physicians provided by Concord. Instead, the Hospital was free to have them work at the facility if it paid Concord a particular sum of money. What the outcome in *Potyka* would have been if that circumstance were present is an exercise in speculation. Nonetheless, it further prevents us from simply adopting the position offered by the Hospital; we cannot simply say that because the covenant was

6

unenforceable there, a different one having somewhat similar affect is also unenforceable.

One more circumstance present in *Potyka* but missing here merits comment. The doctor barred from working in *Potyka* (*i.e.* Crow) complained about the covenant and how it restricted his ability to work with Baptist. Nothing of record suggests that the physicians here had a like complaint. Nor did they bring suit to vitiate the clause. Instead, the Hospital attempts to render unenforceable a contractual provision to which it agreed.

In short, the outcome in *Potyka* arose from circumstances particular to *Potyka*. The summary judgment record before us does not illustrate that the circumstances there are the circumstances here. So, the Hospital did not prove its entitlement to summary judgment here by simply relying on the outcome there.

Having determined that neither ground offered by the Hospital entitled it to summary judgment as a matter of law, we sustain Concord's issue, reverse the summary judgment denying Concord recovery, and remand the cause to the trial court. We also caution against anyone concluding from our decision that the covenant at issue here is valid and enforceable. We simply hold that the Hospital was not entitled to summary judgment given the grounds asserted in its motion and the tenor of the summary judgment record.

Brian Quinn
Chief Justice

7