Mary C. GILL, Appellant,

v.

GUY CHIPMAN COMPANY, Appellee.

No. 04–83–00027–CV.

Court of Appeals of Texas, San Antonio.

Nov. 7, 1984.

Rehearing Denied Dec. 12, 1984.

Henry W. Christopher, Jr., Johnson & Christopher, San Antonio, for appellant.

Calhoun Bobbitt, San Antonio, for appellee.

Before CADENA, C.J., and CANTU and REEVES, JJ.

## OPINION

REEVES, Justice.

This is a suit to enforce a noncompetition clause in an employment contract. Guy Chipman Company, employer, brought suit against Mary C. Gill, employee, alleging a breach of the noncompetition clause.[1] Trial was to the court which rendered judgment for the employer for the sum of $8,000.00 plus attorneys' fees. Findings of fact and conclusions of law were entered by the trial court.

Appellant argues that the trial court erred in entering its conclusions of law numbers one through four,

That paragraph XV [2] of the employment agreement of September 20, 1979, is reasonably restricted as to time and area and is reasonably necessary to the protection of the business and goodwill of Plaintiff, is not unconscionable, and is, therefore, not void as an unreasonable restraint of trade, or otherwise, but is valid and enforceable.

That Defendant has breached paragraph XV of said employment contract by engaging in competition with Plaintiff in its existing market area of Kendall County and Northwest Bexar County, Texas, without payment to Plaintiff of Eight Thousand Dollars ($8,000.00), as specified in said agreement.

That Defendant is obligated to pay to Plaintiff the sum of Eight Thousand Dollars ($8,000.00), as specified in the employment agreement, as a consequence of Defendant's engaging in competition with Plaintiff in its existing marketing area.

That Plaintiff is entitled to recover of and from Defendant Plaintiff's reasonable attorneys' fees in connection with the trial and appeal of this suit,

because (i) there was no evidence that the defendant engaged in any acts of competition with plaintiff that could be classified as "unfair competition" and could, there-

---

1. Article V.

   *Restrictive Covenants*

   *Competition.* Upon termination of her employment, whether by termination of this agreement, by wrongful discharge, or otherwise, employee shall not, without prior consent by employer, directly or indirectly, within the existing marketing area of the employer in the state of Texas or any future marketing area of the employer begun during the employment under terms of this agreement, enter into or engage generally in direct competition with the employer in the business of selling, leasing or managing real estate, either as an individual on her own part or as a partner or joint venturer or as an employee or agent for any person, or as an officer, director or shareholder or otherwise, for a period of 15 months after the date of termination of her employment hereunder. The Employee, in accepting and agreeing to be bound by this covenant, recognizes the extensive and unique management training and other benefits offered to Employee at considerable Employer expense. This covenant on the part of the Employee shall be construed as an agreement independent of any other provisions of this agreement; and the existence of any claim or cause of action of Employee against, Employer, whether predicated on this agreement or otherwise, shall not constitute a defense to the enforcement by Employer of this covenant. However, this restrictive covenant will be cancelled and the Employee shall have the rights to compete against Employer during the 15 months after termination of this agreement upon paying Employer $8,000 cash or upon the payment of $3000 cash and the execution of Employee of a Promissory Note in the principal amount of $5,000 payable to Employer, to be due and payable in two annual installments of $2,500 each plus interest at 10% per annum.

2. There is no paragraph XV in the employment contract. We will presume the trial court meant paragraph V since this is the only paragraph dealing with restricting competition.

fore, be lawfully restrained,[3] and (ii) there was no consideration for the noncompetition agreement.

In determining whether there was any evidence of probative force to sustain the trial court's findings, this court is required to consider only that evidence favorable to the finding and the judgment rendered thereon and to disregard all evidence to the contrary. The judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it, and this court cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings. *Ray v. Farmers' State Bank of Hart,* 576 S.W.2d 607, 609 (Tex.1979).

The Guy Chipman Company (hereinafter referred to as "Chipman"), is a real estate brokerage firm involved in residential, farm and ranch and commercial real estate. Its marketing area includes the north side of Bexar County and Kendall County. The company has several branch offices within the marketing area, each staffed by a manager whose functions include recruiting candidates for the sales force, selection of sales agents, management, training, motivation and goal-setting of the sales force.

Appellant applied for a sales agent position with Chipman's branch office in Boerne, in April, 1979. She was not licensed at the time but attended school and was trained by Chipman. Appellant worked as a sales agent until September, 1979, when she was selected as the branch office manager. The general manager for Chipman explained the manager's employment contract with the noncompetition clause to appellant and she voluntarily signed the contract. The covenant not to compete restricted competition within the marketing area of Chipman for fifteen months or provided for a payment of $8,000.00.

An article was run in the Boerne newspaper announcing her appointment as manager and her name and picture were subsequently printed in weekly advertisements.

To train her for her position of manager, Chipman paid for an extensive management training course held by a consulting firm in Detroit, Michigan. Chipman is the exclusive real estate recipient, in this particular marketing area, of this program. Appellant also received inside training with the training director for Chipman whose sole job is one-on-one training of the managers. On-going training was received in weekly managers' meetings, conventions and seminars held by the Texas Association of Realtors, and a series of taped lectures. Chipman presented evidence at trial that the out-of-office training for appellant cost Chipman $5,271.27.

As a manager, appellant was supplied with guidebooks and manuals for the training of her sales agents. This information was developed by and for the use of Chipman. Appellant received a manual of forms, some of which were developed by attorneys for Chipman and are unique to the company. As manager, appellant reviewed all paperwork of her sales agents and was given computer print-outs of the names of all customers and prospects generated by her branch office.

Appellant was exposed to the financial operations of Chipman, including arrangements for commissions among sales agents, salaries of all personnel, and profit and loss statements of the company.

On November 18, 1981, appellant informed the company that she was resigning to take a job with Topatio Springs Development as an on-site sales agent. Because Chipman did not handle any of the real estate in this development, it did not attempt to enforce the covenant.

Evidence was presented that appellant, while still with Chipman, contacted Gene Canavan about a local real estate company in Chipman's marketing area which she had learned was for sale. Appellant arranged a meeting between Canavan and the owner of this real estate company. An offer was made and Canavan took over this company

---

**3.** No injunction or restraining order issued in this case.

in November, 1981. Appellant was offered the job as manager for Canavan & Associates which she accepted January, 1982.

The manager for Chipman wrote a letter to appellant informing her that he felt she was now in violation of the covenant and requested that they meet to discuss the problem. Appellant did not respond.

Canavan was aware of the covenant in appellant's contract with Chipman, but appellant had told him there would be no problem. Canavan testified that he hired appellant because he felt that the training she had received from Chipman was strong and she would therefore be an asset to his company. Canavan testified appellant made copies of all Chipman's forms and had "brought her whole file" to the new agency. Canavan and appellant discussed hiring one of Chipman's secretaries.

Chipman later learned that appellant had left Canavan & Associates and had started a real estate company with her husband, Jack Gill. Jack Gill had no previous real estate experience. The office of Jack Gill Company (hereinafter referred to as "Gill"), was opened March 28, 1982, with appellant and her husband each owning one-half of the stock. The office was located 500 feet from and on the same side of the street as Chipman. Gill deals in the same type of real estate as Chipman and is in direct competition with it.

The attorney for Chipman was contacted and wrote appellant at least two letters expressing the belief that she was in violation of the covenant. Appellant's attorney responded with a letter stating that his client had no intention of complying with the covenant based on his opinion that such covenant was an illegal restraint of trade. Chipman then filed this lawsuit.

■ An agreement on the part of an employee not to compete with his employer after termination of the employment is in restraint of trade and will not be enforced in accordance with its terms unless the same are reasonable in view of the circumstances of the particular case. Where the public interest is not directly involved, the test for determining the validity of the covenant as written is whether it imposes upon the employee any greater restraint than is reasonably necessary to protect the business and good will of the employer. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960).

This court, in *Hospital Consultants, Inc. v. Potyka*, 531 S.W.2d 657 (Tex.Civ.App.— San Antonio 1975, writ ref'd n.r.e.), had occasion to discuss some important purposes sought to be achieved by an employee restraint. These include the interest in retaining customers whenever the employee's relationship with customers is such that there is a substantial risk that the employee may be able to divert all or part of the employer's business: the important considerations being the frequency of the employee's contacts with customers and whether they are the employer's only contacts or relationships with such customers; the locale of the contact; and the nature of the functions performed by the employee. *Id.*, at 661. Another important purpose sought to be achieved by an employee restraint is preventing valuable business information obtained by employees from being used by a competitor, the so-called "trade secrets" doctrine, including customer lists, sales or trade techniques, new methods, prospect lists, secret processes, corporate good will or commercial procedures. *Id.*, at 662.

The appellant agrees the covenant not to compete is reasonable as to term of duration (15 months) and area, but argues that it is unreasonable as to the scope of the acts restrained.

■ However, appellant does not directly challenge findings of fact by the trial court which state Chipman has developed its own business techniques and methods, many of which are unique to it; that all such methods and techniques were imparted to appellant in connection with her employment as office manager; that as manager appellant had access to intimate knowledge of Chipman's sources of business, actual and potential, as well as financial data regarding the company; and that

the Jack Gill Company made use of Chipman's business forms and performed services for former clients of Chipman.

Appellant, as manager, was in a position of trust with Chipman. She actively sought the position with the company and was aware that her new contract would include the noncompetition clause. The contract specifically pointed out that the "employee, in accepting and agreeing to be bound by [the] covenant, recognizes the extensive and unique management training and other benefits offered to employee at considerable employer expense."

Chipman extensively trained prospective managerial employees in all of its methods and techniques of operating a real estate office, recruiting, training and motivating sales agents, making available to, and instructing the manager in the use of exhaustive real estate form manuals unique to Chipman and developed over many years, making such managers privy to Chipman's customer lists and financial arrangements between Chipman, its agents and employees, and, in general, equipping such managers to competently and professionally operate and run a competing real estate agency of their own, imparting to them training and knowledge specifically useful to them or a competitor against Chipman. The body of information acquired by appellant would not have been available to appellant except by virtue of her being a manager with Chipman.

As a matter of law, once it is determined that confidential business information has in fact been imparted to an employee, restrictive covenants have been upheld as a valid means of protecting the employer's business. *See Arrow Chemical Corp. v. Pugh*, 490 S.W.2d 628 (Tex.Civ.App.—Dallas 1972, no writ); *Park v. Essa Texas Corp.*, 315 S.W.2d 197 (Tex.Civ.App.—Austin 1958, writ ref'd n.r.e.). In this case, the trial court found that the covenant was reasonably necessary to the protection of appellee's business and goodwill and that appellant had breached such covenant. When viewed in the light most favorable to the trial court's judgment, we hold that there was evidence of probative force to support the trial court's findings.

■ Appellant argues there was no consideration for the noncompetition agreement. This argument is without merit. The covenant not to compete was part of the employment contract signed at the inception of appellant's employment as manager with Chipman. The employment itself and the numerous financial benefits flowing from the position as well as opportunities for training and advancement provide consideration to support the contract. This is not a case where the covenant not to compete was signed after employment began or upon termination of employment. *See Chenault v. Otis Engineering Corp.*, 423 S.W.2d 377, 381–82 (Tex.Civ.App.—Corpus Christi 1967, writ ref'd n.r.e.).

Appellant seizes upon the following language in the noncompetition covenant to argue the covenant lacks consideration. "This covenant on the part of the Employer shall be construed as an agreement independent of any other provisions of this agreement. . . ." Appellant interprets this provision to negate use of the remaining employment contract provisions as consideration for the covenant.

To construe this language as Gill contends would distort the plain meaning of the covenant not to compete. The fact that the covenant was expressed as an independent covenant does not mean there must be particular consideration to support it. The covenant was written as an independent promise so that a breach by Chipman of another contract provision would not release appellant from her covenant not to compete. *See generally*, 14 TEX.JUR.3RD *Contracts* § 213 (1981).

Appellant also contends that the trial court erred in entering its finding of fact number twenty-six,

> That the Plaintiff suffered substantial damage as a result of competition by Defendant, although such damages are not susceptible to calculation with mathematical certainty

because (i) there was no evidence of probative force to establish that any damages were suffered, or (ii) in the alternative, the evidence was factually insufficient to establish that the appellee suffered any damages as a result of appellant's competition.

 We review the trial court's finding under the no evidence standard previously stated. If some probative evidence exists, we turn next to assessing the sufficiency of the evidence. The trial court should not be overturned unless, considering the record as a whole, such finding can be said to be so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Miller v. Puritan Fashions Corp.*, 516 S.W.2d 234, 239 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.e.); *Murray v. Murray*, 515 S.W.2d 387, 390 (Tex.Civ.App.—Waco 1974, no writ).

 Chipman offered evidence that its business had declined since Gill opened its office and that Gill is a successful real estate agency, attributable at least partly to appellant's training and past experience. Appellant took with her and imparted to the Canavan agency and then to her own company, the confidential business techniques and methods of Chipman. There was evidence that former clients were now with Gill. In cases where there has been a breach of a covenant not to compete, the amount of actual damages is rarely certain. *See Mayhall v. Proskowetz*, 537 S.W.2d 320 (Tex.Civ.App.—Austin 1976, writ ref'd n.r.e.).

The trial court, although finding that damages were established, found that such damages were not susceptible to calculation with mathematical certainty. In such cases, a party is not denied all right of recovery but the amount of damages is fixed by the fact finder in the exercise of sound discretion. *See Texas Sanitation Co., Inc. v. Marek*, 381 S.W.2d 710, 715 (Tex.Civ.App.—Corpus Christi 1964, no writ). We hold that the finding of the trial court as to damages was supported by the evidence and was not against the great weight and preponderance of the evidence.

We find no reversible error. The judgment of the trial court is affirmed.