**Joel HILL, Petitioner,**

**v.**

**MOBILE AUTO TRIM, INC.,
Respondent.**

**No. C–4996.**

Supreme Court of Texas.

Jan. 28, 1987.

Dissenting Opinion March 18, 1987.

Concurring Opinion on Motion for
Rehearing March 18, 1987.

---

Tom S. McCorkle, McCorkle & Westerburg, Dallas, for petitioner.

Roger Turner, Dallas, for respondent.

KILGARLIN, Justice.

Based on a covenant not to compete in a franchise agreement, Mobile Auto Trim, Inc. sought to enjoin Joel Hill, a former franchisee, from competing with it in a seven-county area. The trial court granted the temporary injunction. The court of appeals, with one justice dissenting, affirmed the temporary injunction. 704 S.W.2d 384. Because of the dissent, we have jurisdiction over this cause. *Gannon v. Payne*, 706 S.W.2d 304 (Tex.1986). In a single point of error, Hill complains that the non-competition agreement is a restraint on trade and is unreasonable. We agree and therefore reverse the judgment of the court of appeals, dissolve the temporary injunction, and hold the restrictive covenant in the franchise agreement void in all respects.

Mobile Auto Trim sells car trim franchises in which equipped vans are driven to car dealerships to make repairs at the premises. In August 1982, Mobile sold a franchise to Joel Hill for approximately $42,000 plus five percent of his gross revenues. Hill's franchise covered a large part of Dallas County and all of Denton County. The franchise agreement contained this covenant not to compete:

Franchisee (Hill) agrees that upon termination of this Franchise Agreement, for whatever reason, Franchisee shall not directly or indirectly, as an officer, director, shareholder, proprietor, partner, consultant, employee or in any other individual or representative capacity, engage, participate or become involved in any business that is in competition in any manner whatsoever with the business of the Company or its franchisees. Furthermore it is understood between the parties that substantial goodwill will exist between the Company and the managers of the various car dealerships serviced by the Company and the Company's franchisees. Because said managers are transient and frequently change employment among car dealerships, Franchisee further agrees that upon termination of this Franchise Agreement, for whatever reason, Franchisee will not directly or indirectly in any manner whatsoever, in any capacity whatsoever, contact said managers (irrespective of the car dealerships that employ them) regarding business in competition with the Company. This covenant shall extend for a period of three (3) years following the termination of this Franchise Agreement or any renewal hereof. Further, this covenant shall cover the following geographic area during said period: The following Texas Counties: Dallas, Tarrant, Ellis, Denton, Rockwall, Kaufman, and Collin.

For two and a half years, as Mobile's franchisee, Hill contacted car dealerships and made car trim repairs in his two-county area. In April 1985, after Hill had not paid his franchise fees for several months, Mobile Auto Trim picked up his van and terminated the franchise agreement. That day, after the franchise agreement had been terminated, Hill contacted a prior customer, a car dealership manager in Dallas County. Thereafter, Mobile Auto Trim sought a temporary injunction to enjoin Hill from competing with it or contacting car dealership managers in the seven counties listed in the covenant not to compete.

Courts in Texas encounter two general varieties of covenants not to compete: covenants specifying that the seller of a business will not compete with the buyer, *Daniel v. Goesl*, 161 Tex. 490, 341 S.W.2d 892 (1960), and covenants specifying that an employee, upon discharge, will not compete with the former employer, *Justin Belt Co. v. Yost*, 502 S.W.2d 681 (Tex.1974). These covenants commonly set forth temporal and geographical restraints on the promisor's ability to compete with the promisee, which restraints must be reasonable. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960).

Under the common law of contracts, a covenant not to compete is in restraint of trade and its terms are enforceable only if, and to the extent that, they are, in other respects, also reasonable.[1] Whether a covenant not to compete is reasonable is a question of law for the court. *Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983). A covenant is unreasonable "if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d at 951; *Henshaw v. Kroenecke*, 656 S.W.2d at 418; *see also* Restatement (Second) of Contracts § 188.

A covenant must meet four criteria in order to be deemed reasonable. First, the covenant must be necessary for the protection of the promisee. That is to say, the promisee must have a legitimate inter-

---

**1.** Some states prohibit all or most forms of restrictive covenants by statute. State statutes prohibiting or limiting such post-employment restraints include: Alabama: Ala.Code § 8–1–1 (1975); California: Cal.Bus. & Prof.Code § 16600 (West 1964); Colorado: Colo.Rev.Stat. § 8–2–113 (1973) (however, the statute permits employee noncompete agreements where the employer wishes to recover the costs of *educating or training* an employee or when the employee is an executive or staff member of an executive); Louisiana: La.Rev.Stat.Ann. § 23.-921 (West 1964) (a maximum two-year restriction is permitted, however, if the employer has *trained* or *advertised* for the employee); Michigan: Mich.Comp.Laws § 445.761 (1967); North Dakota: N.D.Cent.Code § 9–08–06 (1960); Oklahoma: Okla.Stat. tit. 15 § 217 (1966); South Dakota: S.D. Codified Laws Ann. § 53–9–8 (1980).

est in protecting business goodwill or trade secrets. Second, the covenant must not be oppressive to the promisor, as courts are hesitant to validate employee covenants when the employee has nothing but his labor to sell. In this respect, the limitations as to time, territory, and activity in the covenant not to compete must be reasonable. *Frankiewicz v. National Comp Associates*, 633 S.W.2d 505, 507 (Tex.1982); *Justin Belt Co., Inc. v. Yost*, 502 S.W.2d at 685; *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d at 951. Third, the covenant must not be injurious to the public, since courts are reluctant to enforce covenants which prevent competition and deprive the community of needed goods. *Weatherford Oil Tool v. Campbell, id.;* 14 S. Williston, *A Treatise on the Law of Contracts* § 1639 (3d ed. 1967 and Supp. 1983). *See generally* Note, *Sakowitz v. Steck: Texas Looks at Covenants Not To Compete*, 38 Baylor L.Rev. 211, 214–18 (1986).

■ Finally, as with any contract, the non-competitive agreement should be enforced only if the promisee gives consideration for something of value. Rubin & Schedd, *Human Capital and Covenants Not To Compete*, 10 J. Legal Studies 93 (1981). This doctrine promotes economic efficiency. In the case of covenants not to compete incident to the sale of a business, the seller's promise not to compete with the buyer increases the value of the business to the buyer. Without such a covenant the value of the business would be reduced, lessening the likelihood that businesses would be purchased. In employee covenants, the special training or knowledge acquired by the employee through his employer is valuable consideration and often enhances the value of the employee to other firms. To allow employees to use or sell this valuable training or knowledge upon leaving a firm would create a disincentive for employers to train or educate employees. Comment, *Economic And Critical Analyses of the Law of Covenants Not to Compete*, 72 Geo.L.J. 1425 (1984).

But, the covenant before us today cannot be clearly categorized as either a covenant incident to the sale of a business or a post-employment covenant to prevent utilizing special training or knowledge. Hill obtained his skills as an auto trim repairman prior to his franchise agreement with Mobile Auto Trim. Hill bought a franchise from Mobile for approximately $42,000 plus 5% of his gross revenues. In effect, Hill paid for the use of Mobile's name and accompanying goodwill.

■ This restrictive covenant is plagued by a lack of reasonableness. Initially, there is an apparent absence of consideration. What value did Mobile give in exchange for Hill's promise not to compete? It was not specialized training or knowledge, for that was acquired by Hill prior to his franchise agreement, nor was it Mobile's promise not to compete with Hill after their business relation terminated. And, although Mobile Auto Trim alleges that its trim services are trade secrets, they do not provide any substantiation, did not bring suit to stop the use of their trade secrets, and are willing to let Hill use their techniques anywhere except the Dallas-Fort Worth metroplex.

■ More importantly, we find no legitimate business interest of Mobile which the covenant is necessary to protect. The contract alleges, and the record indicates, that the purpose of this covenant not to compete was to prevent Hill from exploiting the contacts and "the substantial goodwill [that] exist[s] between the Company and the managers of the various car dealerships." However, there exists not only business goodwill but also franchisee goodwill. When people leave a business to work for another or to open a firm of their own, many are capable of taking with them a sizeable number of the clients whom they had served at their previous place of employment. If they were not in possession of some type of personal magnetism or personal goodwill, they would be incapable of retaining those clients or customers. Shrewd employers and franchisors know this and seek to deprive the employee/franchisee of the fruits of his goodwill by requiring that he enter into an agreement containing a restrictive covenant. The cov-

enant is generally unfair to the employee/franchisee, for when that person is placed in the position of being unable to compete with the former employer/franchisor, his personal goodwill is effectively neutralized.

■ In the past this court has modified restrictive covenants in order to make the time, area and scope of the covenant reasonable. *Matlock v. Data Processing Security, Inc.,* 618 S.W.2d 327, 329 (Tex. 1981); *Justin Belt Co., Inc. v. Yost,* 502 S.W.2d at 684; *Spinks v. Riebold,* 310 S.W.2d 668, 669 (Tex.Civ.App.—El Paso 1958, writ ref'd). But, there has never been a presumption that so long as the restriction does not encumber the former franchisee's ability to compete for a long time or over a wide radius, the covenant is otherwise deemed fair. To presume such would be to ignore the fact that the franchisor ordinarily has no right to prohibit fair competition. Tex.Const. art. I, § 26. If fair competition is injurious to the franchisor, then so be it: it is but a normal effect of a free market economy.

■ Finally, the covenant is oppressive to the promisor, Hill. Not only has he lost his franchise and investment therein, he is now prevented from using his previously acquired skills and talent to support him and his family in the county of their residence. We recognize that a man's talents are his own. Absent clear and convincing proof to the contrary, there must be a presumption that he has not bargained away the future use of those talents. Professor Williston referred to this concept in his authoritative work on contract law, and it is a fitting summary of the nearly forgotten notion:

> A man's aptitudes, his skill, his dexterity, his manual or mental ability—all those things which in sound philosophical language are not objective, but subjective— they may and they ought not to be relinquished by a servant; they are not his master's property; they are his own property; they are himself. There is no public interest which compels the rendering of those things dormant or sterile or unavailing; on the contrary, the right to

use and to expand his powers is advantageous to every citizen, and may be highly so for the country at large.

S. Williston, *A Treatise on the Law of Contracts* § 1646 (rev. ed. 1937) (citing *Morris v. Saxelby,* 1 A.C. 688, 714 [H.L. 1916]).

Today, we are presented with an individual who is skilled in auto trim repair and are asked to prohibit him from engaging in a common calling. We refuse to do so. The longevity of the reasonableness approach has been its flexibility. "The changing conditions of life modify from time to time the reasons for determining whether the public interest requires that a restrictive stipulation shall be deemed void as against public policy." *Samuel Stores, Inc. v. Abrams,* 94 Conn. 248, 252, 108 A. 541, 543 (1919). In 1982, the Utah Supreme Court refused to enforce a hearing aid distributor's non-competition agreement against a former salesman, setting forth the standard which we adopt today: "[c]ovenants not to compete which are primarily designed to limit competition or restrain the right to engage in a common calling are not enforceable." *Robbins v. Finlay,* 645 P.2d 623, 627 (Utah 1982).

■ The issue before us is whether Mobile Auto Trim is entitled to have the restrictive covenant enforced pending trial on the merits. *Iranian Muslim Organization v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981). Mobile must show a probable right of recovery and a probable injury in order to justify the issuance of a temporary injunction. *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549 (1953). For the foregoing reasons, we hold there is no probable right of recovery. Therefore, we reverse the judgment of the court of appeals, dissolve the temporary injunction, and hold the restrictive covenant in the franchise agreement void in all respects.

GONZALEZ, J., files a dissenting opinion in which HILL, C.J., and CAMPBELL, J., concur.

GONZALEZ, Justice, dissenting.

The opinion dated January 28, 1987 is withdrawn and the following is substituted.

For reasons not pled, argued or briefed, the court ignores well established Texas precedent and announces a new rule that puts into question the validity of covenants not to compete in franchise agreements. I would modify the judgment of the court of appeals and as modified, affirm that judgment.

This is an appeal from the granting of a temporary injunction. The only substantive issue on appeal is whether the trial court abused its discretion in granting the temporary injunction. By making a premature ruling on the merits of the injunction, the court has effectively denied Mobile Auto Trim its right to a trial by jury. Furthermore, the temporary injunction at issue does not include an order setting the case for trial on the merits as required by Tex.R.Civ.P. 683. We have previously held that the requirement of Rule 683 is mandatory. *Interfirst Bank San Felipe v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986). If the court feels compelled to declare the covenant in question void for reasons not raised or anticipated by the parties, Rule 683 is the more appropriate ground. This is preferable to fashioning a broad new rule that destabilizes a well settled area of the law. For all of these and the following reasons, I dissent.

## I. *Ruling on the Merits of the Case.*

The court holds the covenant not to compete in the franchise agreement "void in all respects." 725 S.W.2d 169. Thus, the court has determined the *merits* of this proceeding on appeal from the grant of a temporary injunction. The rules of law governing the right of trial courts to grant or deny a temporary injunction, and appellate review of orders, are "well established and clearly defined." *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). As Justice Spears stated in *Iranian Muslim Org. v. City of San Antonio*, 615 S.W.2d 202, 208 (Tex.1981): "the only question before the trial court in a temporary injunction hearing is whether the applicant is entitled to preservation of the status quo of the subject matter of the suit pending trial on the merits.... the question to be decided on appeal is whether the trial court abused its discretion in granting or denying the temporary injunction." *See Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d 327, 328 (Tex.1981); *Brooks v. Expo Chem. Co.*, 576 S.W.2d 369, 370 (Tex.1979); *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978). Thus, the merits of the underlying case are not presented for appellate review in an appeal from an order granting or denying a temporary injunction. *Brooks v. Expo Chem. Co.*, 576 S.W.2d at 370. The effect of a premature review of the merits is to deny the opposing party the right to trial by jury. *Id.; Davis v. Huey*, 571 S.W.2d at 862.

Further, courts should neither assume that the evidence taken at a preliminary hearing on a temporary injunction will be the same as the evidence developed at a trial on the merits, nor should they decide legal questions which can be determined at the time of trial on the merits after the facts are fully developed. *Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d at 329; *Transport Co. of Texas v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553 (1953). *See also University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 1834, 68 L.Ed.2d 175 (1981) (inappropriate for court at preliminary injunction stage to give a final judgment on the merits).

The facts are rarely developed fully during a temporary injunction hearing. Typically, neither party has had an opportunity to develop all the facts through expedited discovery prior to a hearing, and the evidence introduced is sparse. This is not an adequate record to determine the merits of the underlying controversy.

## II. *The Reasonableness Test.*

A covenant not to compete is a restraint of trade and its terms are enforceable only if they are reasonable. *Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950, 951 (1960). A covenant is unreasonable "if it is greater than is required for the protection of the person for whose benefit the restraint is imposed or imposes undue hardship upon the person restricted." *Id.; Henshaw v. Kroenecke*, 656 S.W.2d 416, 418 (Tex.1983). *See* Restate-

ment (Second) of Contracts § 188 (1979). The limitations as to time, territory and activity in the covenant not to compete must be reasonable. *Frankiewicz v. National Comp Assocs.*, 633 S.W.2d 505, 507 (Tex.1982); *Justin Belt Co. v. Yost*, 502 S.W.2d 681, 685 (Tex.1973). To determine if a territorial limit in a covenant not to compete is reasonable, the court balances the interests of the promisor, the promisee and the public. *Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d at 329. *See* Restatement (Second) of Contracts § 188 comment d (1979); 6A Corbin on Contracts § 1394 (1962).

Whether a covenant not to compete is reasonable is a question of law for the court. *Henshaw v. Kroenecke*, 656 S.W.2d at 418. If the restraints in the covenant not to compete are unreasonable, the court will enforce the covenant but grant an injunction for a time, area and scope that is reasonable. *E.g., Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d at 329; *Justin Belt Co. v. Yost*, 502 S.W.2d at 685; *Spinks v. Riebold*, 310 S.W.2d 668, 669 (Tex.Civ.App.—El Paso 1958, writ ref'd).

Here, the purpose of the covenant not to compete was to prevent Hill from exploiting the contacts and goodwill he made while working in his assigned franchise area. The covenant attempted to prohibit Hill from calling on any car dealerships in the entire seven-county Dallas-Fort Worth metroplex because managers from Hill's assigned area often move to other dealerships in the surrounding counties. The record also reveals that Hill called on no car dealership managers outside his assigned franchise area and thus generated no goodwill except in that area.

Because protecting customer contacts and goodwill are proper reasons for having a covenant not to compete, I would affirm the temporary injunction; however, I would modify the temporary injunction to enjoin Hill from competing in his assigned two-county area and from contacting any car dealership managers in the seven-county area that he had prior contacts with during the franchise agreement time period. To enjoin Hill from competing or contacting any manager in the entire seven-county area would be a greater restraint than is reasonably necessary to protect Mobile Auto Trim.

I also disagree with the manner in which the court frames the issue. The central question is not whether Hill is being prohibited from engaging in a "common calling," but whether the covenant not to compete is reasonable. The court recites a four-part test to determine the reasonableness of a covenant not to compete: (1) the promisee must have a legitimate interest in protecting business goodwill or trade secrets; (2) the limitations as to time, territory and activity in the covenant must be reasonable; (3) the covenant must not be injurious to the public; and (4) the promisee must give consideration for the covenant. The court then concludes that the covenant not to compete is "plagued by a lack of reasonableness" under this test. I disagree.

1. *Protection of the Promisee's Legitimate Interests.*

The court concludes there is "no legitimate business interest of Mobile which the covenant is necessary to protect." 725 S.W.2d 172. The court then proceeds to create a new principle by distinguishing between "business goodwill" of the franchisor and "personal goodwill" of the franchisee. The court also suggests that the goodwill developed by the franchisee on behalf of the franchisor belongs to the franchisee, and that the franchisor cannot legitimately seek to protect that goodwill. This principle is inconsistent with Texas law.

The authorities that have considered this issue have uniformly determined that goodwill developed by either a franchisee or an employee accrues to the benefit of the franchisor or employer, respectively, and is an interest in which the franchisor or employer is entitled to protect. In *Henshaw v. Kroenecke*, 656 S.W.2d at 418, we stated:

> Henshaw had a right to protect himself from the possibility that Kroenecke would establish a rapport with the clients of the business and upon termination take a segment of that clientele with him.... Henshaw had a legitimate interest to protect, and therefore, the covenant was reasonable.

*See Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d at 951; *Spinks v. Riebold*, 310 S.W.2d at 669. *See also Gill v. Guy Chipman Co.*, 681 S.W.2d 264, 268 (Tex.

App.—San Antonio 1984, no writ) (employee restraint necessary to protect diversion of employer's business); *Investors Diversified Servs., Inc. v. McElroy*, 645 S.W.2d 338, 339 (Tex.App.—Corpus Christi 1982, no writ) (injury is the diversion of customers and goodwill from the employer); *Leck v. Employers Casualty Co.*, 635 S.W.2d 450, 453–54 (Tex.App.—Fort Worth 1982, no writ) (protecting employer from harm to the business by employee diverting customers); *Dittmer v. Source EDP, Texas, Inc.*, 595 S.W.2d 877, 880 (Tex.Civ.App.—Dallas 1980, no writ) (contacts with employer's customers were protectable assets); *Kidde Sales & Serv., Inc. v. Peairson*, 493 S.W.2d 326, 329–30 (Tex.Civ.App.—Houston [1st Dist.] 1973, no writ) (covenant valid where employee acquires special influence over employer's customers giving employee advantage over employer in competition for customer's business); *Hospital Consultants, Inc., v. Potyka*, 531 S.W.2d 657, 661 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.) (employer has sufficient interest in retaining customers to support covenant not to compete).

Even the Utah Supreme Court, which is relied upon by the court, has held that the goodwill created by an employee at the expense of the employer belongs to the employer even though a large measure of that goodwill was due to the personality and efforts of the employee. *See System Concepts, Inc. v. Dixon*, 669 P.2d 421, 426 (Utah 1983); *Allen v. Rose Park Pharmacy*, 120 Utah 608, 237 P.2d 823, 827 (1951). Other jurisdictions are in accord. *See Gafnea v. Pasquale Food Co.*, 454 So.2d 1366, 1369 (Ala.1984); *Snelling and Snelling, Inc. v. Dupay Enters., Inc.*, 125 Ariz. 362, 609 P.2d 1062, 1064 (App.1980); *Watson v. Waffle House, Inc.*, 253 Ga. 671, 324 S.E.2d 175, 177–78 (1985); *Shakey's Inc. v. Martin*, 91 Idaho 758, 430 P.2d 504, 509–10 (1967).

### 2. *Limitations as to Time and Territory.*

The court held that the limitations as to time, territory and activity in the covenant not to compete were unreasonable. I agree that the area of restraint in the covenant is greater than is reasonably necessary to protect Mobile Auto Trim. However, after reforming the area limitation to enjoin Hill from competing with Mobile in his assigned two-county area and from contacting any car dealership managers in the assigned seven-county area that he had prior contacts with as a franchisee, the limitations are reasonable. The problem is the court's refusal to follow well established precedent and reform the covenant to impose reasonable limitations.

The court correctly states that *"[i]n the past this court has modified restrictive covenants in order to make the time, area and scope of the covenant reasonable."* 725 S.W.2d 172 (emphasis added). However, the court then concludes, based on a skimpy record, that the covenant not to compete is void. The implication is that such covenants will not be modified by the court's equity powers in the future.

The long-standing practice of Texas courts is to reform covenants not to compete and enforce those covenants to the extent that the restraint imposed is reasonable. *See Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d at 329; *Justin Belt Co. v. Yost*, 502 S.W.2d at 685; *Weatherford Oil Tool Co. v. Campbell*, 340 S.W.2d at 952; *Dittmer v. Source EDP, Texas, Inc.*, 595 S.W.2d at 881–82. *See also Spinks v. Riebold*, 310 S.W.2d at 669 (courts "will not" declare void unreasonable restraints but rather will enforce only the reasonable portions). This approach is also adopted by the Restatement. Restatement (Second) of Contracts § 184 comment b (1979). *See* 6A Corbin on Contracts § 1390, at 70–71 (1962); 14 S. Williston, A Treatise on the Law of Contracts § 1647C, at 293 (3d ed. 1972). Texas courts should continue this practice.

Because Hill is not prohibited from providing for his family in his home county or elsewhere by working for a body shop or car dealer as long as he does not call on car dealers and make car trim repairs from a mobile van, the covenant not to compete is reasonable as reformed.

### 3. *Interest of the Public.*

The court does not specifically address this criterion. However, this court has implicitly held in prior cases that the enforcement of reasonable covenants not to compete is in the best interest of the the public. *See generally Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d at 329. *See also Gafnea v. Pasquale Food Co.*, 454 So.2d at 1369 ("it does not interfere with the public

interest to allow limited covenants against competition between franchisors and franchisees"); *Shakey's Inc. v. Martin*, 430 P.2d at 511 ("courts must be guided by the overriding public interest in the preservation of the freedom of contract"); Restatement (Second) of Contracts § 188 comment c (1979) ("restraint may increase efficiency by encouraging the employer to entrust confidential information to the employee").

### 4. *The Requirement of Consideration.*

The court suggests that consideration for a covenant not to compete must exist independently of other consideration provided by the promisee to support the primary purpose of the contract. This is an incorrect application of current Texas law and of the law in any other jurisdiction. A covenant not to compete is enforceable when ancillary to and in support of an otherwise valid contract having a primary purpose unrelated to the suppression of competition between the parties. *See Justin Belt Co. v. Yost*, 502 S.W.2d at 683–84; 14 S. Williston, A Treatise on the Law of Contracts § 1636, at 102 (3d ed. 1972). *See also Potomac Fire Ins. Co. v. State*, 18 S.W.2d 929, 934–35 (Tex.Civ.App.—Austin 1929, writ ref'd) (an independent agreement to limit competition is unenforceable). For example, the primary purpose of the contract can be the sale of a business, creation of a partnership to conduct a lawful business, or a contract of employment. So long as there is an exchange of consideration to support the primary purpose of the agreement, the covenant not to compete is ancillary and also supported by that consideration. *Gill v. Guy Chipman Co.*, 681 S.W.2d at 269; *Chenault v. Otis Eng'g Corp.*, 423 S.W.2d 377, 382 (Tex.Civ.App.—Corpus Christ 1967, writ ref'd n.r.e.).

Even the Utah Supreme Court in a case subsequent to *Robbins v. Finlay*, 645 P.2d 623 (Utah 1982), relied upon by the court has held that "continued employment [is] adequate consideration for [an employee's] submission to the terms of the covenant." *System Concepts, Inc. v. Dixon*, 669 P.2d at 426. Here, the franchise agreement in issue contains language typical of franchise agreements in general promising to supply the franchisee with assistance in generating business and goodwill in the licensed area. In addition, the franchisor agreed not to help anyone else develop business or goodwill under the franchisor's trademarks and business format in the licensed area.

These provisions set forth the consideration received by the franchisee, Hill, through the franchise agreement. Accordingly, given the fact that the primary purpose of the agreement between the parties was to establish a franchise and adequate consideration is recited for that purpose, consideration for the ancillary covenant not to compete was established. We should not now require a further consideration to support the ancillary covenant.

### III. *The Common Calling Test.*

After finding that the covenant not to compete fails to pass the reasonableness test, the court proceeds to adopt a broad new standard to determine the validity of a covenant not to compete. The court implicitly holds that a former franchisee or employee who is engaged in a "common calling" is free to divert the customers of a former franchisor or employer in disregard of a prior contractual agreement not to do so. If this is what the court means, the practical effect of this is to void most, if not all, covenants not to compete in franchise agreements and/or to generate extensive and costly litigation until the court adopts a definition of "common calling" and/or litigants test the limits of this opinion. What about employees engaged in a "common calling" that also have knowledge of the employer's trade secrets? Are they free to divulge the trade secrets in violation of an agreement to the contrary?

If courts fail to protect employers from the competition of departing employees, employers will be reluctant to allow any employee to handle too many customers. Additionally, employers will be reluctant to invest significant resources in developing goodwill. *See generally* R. Posner, Economic Analysis of Law § 3.1, at 30 (2d ed. 1977). *See also Shakey's Inc. v. Martin*, 430 P.2d at 508 (no one would risk the purchase of a business without the protection of an enforceable covenant not to compete); Rubin & Shedd, *Human Capital and Covenants not to Compete*, 10 J. Legal Stud. 93, 102–04 (1981) (to allow depart-

ing employee to use employer information discourages development of such information). This new standard only serves to discourage growth and investment of employers and franchisors in Texas.

Furthermore, the court is remiss in not providing guidance to the bench and bar by failing to define "common calling." Of necessity, litigants will turn to Utah case law which the court relied upon in fashioning this new test. Unfortunately, litigants will discover that the Utah Supreme Court cited no authority in *Robbins v. Finlay*, 645 P.2d at 627, for the proposition quoted by the court. Moreover, the Utah Supreme Court has subsequently enforced a covenant not to compete in order to protect employer goodwill. *System Concepts, Inc. v. Dixon,* 669 P.2d at 426. Thus, the confusion as to the meaning of the "common calling" test becomes apparent. I believe that the better rule is that which heretofore has been followed by Texas courts.

## IV. *Distinction Between Covenants Not To Compete In Franchise Agreements and Employment Contracts.*

From the references to "employee/franchisee" and "employer/franchisor" it is apparent that the court makes no distinction between covenants not to compete contained in contracts for employment and contracts for the sale of franchises. I disagree. This case involved a *franchise relationship, not an employment relationship.* The court's reliance on *Robbins v. Finlay* to adopt a new standard is misplaced. That case involved a salesman's employment covenant, not a franchise covenant. Moreover, *Robbins v. Finlay* was an appeal from a judgment after a full trial on the merits. As previously noted, in our case, we do not have the benefit of a complete record.

Franchise relationships are far different from employment relationships. The reason for drawing a clear distinction is that courts scrutinize covenants not to compete in employment relationships more closely than covenants not to compete associated with the sale of a business. 14 S. Williston, A Treatise on the Law of Contracts § 1643 (3d ed. 1972); Restatement (Second) of Contracts § 188 comments f, g (1979). *See Wilkinson v. Manpower, Inc.,* 531 F.2d

712, 717 (5th Cir.1976) (no apparent rationale for distinguishing a franchise from the sale of a business); *Hospital Consultants, Inc. v. Potyka,* 531 S.W.2d at 663 (restrictive covenant in sale of a business or goodwill is quite different from post-employment restrictions). The reason for this difference in scrutiny is the assumption that an employer has a superior bargaining position as compared to the employee resulting in some type of economic coercion against the employee. Restatement (Second) of Contracts § 188 comment g (1979). In contrast, the franchisee pays the franchisor a fee and royalties to learn and use the franchisor's successful business format. The franchisee, unlike an employee, is not compelled to enter the relationship to have a livelihood. *See Shakey's Inc. v. Martin,* 430 P.2d at 504 (covenant protects franchisor's livelihood of selling and maintaining franchise).

Protectable interests in the franchisor have been recognized by every court that has considered the issue. *See generally Wilkinson v. Manpower, Inc.,* 531 F.2d at 712; *Gafnea v. Pasquale Food Co.,* 454 So.2d at 1366; *Snelling and Snelling, Inc. v. Dupay Enters., Inc.,* 609 P.2d at 1062; *Watson v. Waffle House, Inc.,* 324 S.E.2d at 175; *Williams v. The Shrimp Boat, Inc.,* 229 Ga. 300, 191 S.E.2d 50 (1972); *Shakey's Inc. v. Martin,* 430 P.2d at 504; *McDonald's System, Inc. v. Sandy's Inc.,* 45 Ill.App.2d 57, 195 N.E.2d 22 (1963); *Piercing Pagoda, Inc. v. Hoffner,* 465 Pa. 500, 351 A.2d 207 (1976); *Pelton's Spudnuts, Inc. v. Doane,* 120 Utah 366, 234 P.2d 852 (1951).

Against these interests, we must balance the public's interest in free and full competition. *See Matlock v. Data Processing Sec., Inc.,* 618 S.W.2d at 329. The best way to foster new business and competition in Texas is to hold persons, absent any disability, to the terms of their contracts. In this way, parties can define their legal relationships in advance in the security that those relationships will be upheld.

## V. *Conclusion*

It is inexplicable to me why the court has gone out of its way to take such an important step in changing well established law without the benefit of a complete record and without being raised by a point of

error.[1]    As Justice Kilgarlin said in his dissent in *Logan v. Mullis,* 686 S.W.2d 605, 610 (Tex.1985):

> A question of law not argued by either party and not found in the court of appeals opinion is outside this court's power and authority to decide legal questions.

These procedural rules not only incorporate basic jurisdictional concepts but also provide important constitutional safeguards.  Due process assures not only an opportunity to present one's position but also an opportunity to respond to issues raised by one's opponent.  When a case is decided on an issue never raised or anticipated, that opportunity is denied.  Justice Frankfurter once noted that "the history of liberty has largely been the history of observing procedural safeguards."  *McNabb v. U.S.,* 318 U.S. 332, 347, 63 S.Ct. 608, 616, 87 L.Ed. 819 (1943).  Because I would decide the case only on the issues properly before the court, I dissent.

Stability and predictability are important goals of an efficient legal system.  When changing the law, we should proceed with caution.  We should only change a doctrine of law when it is obsolete, when it is within our jurisdiction to do so and when all procedural safeguards are observed.  Nowhere does Hill complain that the law or rules governing restrictive covenants are obsolete or that they are not serving their true function which is the achievement of justice according to law.  It is therefore preposterous that the court has made major shifts in the law on its own initiative.  We owe it to the bench and bar to follow precedent and our own rules.

Finally, the court's opinion raises many new questions where none existed.  The court should grant the motion for rehearing and clarify its opinion.

HILL, C.J., and CAMPBELL, J., join in this dissenting opinion.

## ON MOTION FOR REHEARING

ROBERTSON, Justice, concurring.

I concur in the judgment dissolving the temporary injunction.  However, I believe that the court should not have written on the merits.  In *Interfirst Bank San Felipe v. Paz Construction Co.,* 715 S.W.2d 640 (Tex.1986), this court held that the requirements of Tex.R.Civ.P. 683 are mandatory and must be strictly followed, otherwise the temporary injunction order will be void.  *Interfirst* at 641.  Because the trial court in *Interfirst* did not include an order setting the cause for trial on the merits, which is patently contrary to the language of Rule 683, we reversed the court of appeals and declared the temporary injunction void.  It has come to our attention on rehearing, though not briefed or argued, that the trial court here made the same mistake that was made in *Interfirst,* thus the same result should follow.  I neither agree nor disagree with the conclusions made by the majority or dissent; rather I feel that we need have looked no further than *Interfirst* to decide this case.  By its actions, the majority has created an irreconcilable conflict between two cases decided by this court within a single year.  Such a result is of benefit to no one.

---

**1.**  Hill brings only one point of error to this court: "The Court of Appeals erred in holding that there was a probable right of recovery and no abuse of discretion by the trial court thus upholding the granting of a temporary injunction because said injunction is overbroad and unreasonable."