**M.R.S. DATASCOPE INCORPORATED, Appellant,**

v.

**EXCHANGE DATA CORPORATION, INC., et al., Appellees.**

No. 01–87–00401–CV.

Court of Appeals of Texas, Houston (1st. Dist.).

Feb: 11, 1988.

Anastassios Triantaphyllis, Jeffery W. Tayon, Butler & Binion, Houston, for appellant.

Don Fogel, Morris Campbell, Houston, for appellees.

Before SMITH, HOYT and LEVY, JJ.

OPINION ON MOTION FOR
REHEARING

LEVY, Justice.

Our prior opinion dated October 8, 1987, is withdrawn, and the following opinion is substituted. The motion for rehearing is granted, but the requested relief is denied, and the motion to certify questions is also denied.

M.R.S. Datascope Incorporated (hereafter "M.R.S.") appeals from an interlocutory order entered by the trial court that denied, in part, M.R.S.'s application for a temporary injunction to restrain competition.

M.R.S. is engaged in the medical records service business in Houston. Appellees, Pat Houghton and Sheryl Woolf, are former employees of M.R.S. who are currently employed by Exchange Data Corporation (hereafter "Exchange Data"), a direct competitor of M.R.S.

In 1984 and 1985, Houghton was engaged in the medical records service business with Datascope of San Antonio and Synergy IV of Houston. Both Datascope of San Antonio and Synergy IV of Houston were owned by Eikon Corporation. In February of 1986, Datascope of San Antonio and Synergy IV of Houston were sold to M.R.S. Although Houghton participated in the negotiations for the sale of the business and was at one time an owner of Eikon Corporation, he testified that he did not receive any proceeds from the sale.

When the two businesses were purchased by M.R.S. pursuant to an oral agreement, M.R.S. also orally agreed to employ Houghton as a consultant, and provide him with an automobile and an expense account.[1] M.R.S. contends that as part of the sale and in exchange for his employment, Houghton orally agreed not to compete in the medical records service business in Houston and San Antonio for three years following his employment with M.R.S. Houghton was terminated in August of 1986, and in September of 1986, Exchange Data Corporation was formed in

---

1. M.R.S. contends Houghton was hired only as a sales person, and was told that all of his expenses would not be paid.

Houston with Houghton as president and chief operating officer.

In January of 1985, M.R.S. purchased Verbatim Record Services in Houston from Sheryl Woolf, and Woolf also began her employment with M.R.S. at that time. Ancillary to the sale of her business to M.R.S., Woolf entered into a written employment contract that contained a covenant not to compete for three years in the seven counties surrounding Houston after the termination of her employment with M.R.S.

During her first 14 months with M.R.S., Woolf received a guaranteed payment of $1,700 per month for 12 months as the purchase price for her business, plus a commission of 10% on monthly sales over $17,000. Her average salary was between $2,600 and $2,700 a month. In October of 1986, Woolf requested an office position due to her pregnancy. M.R.S. continued to pay her approximately the same salary for several weeks, until the position of "executive secretary" was created. Woolf was offered the position at $1,800 per month, but refused the position, terminated her employment, and went to work for Exchange Data in February of 1987.

■ The substantive question on appeal is whether the trial court abused its discretion in denying the temporary injunction. *See Matlock v. Data Processing Sec., Inc.*, 618 S.W.2d 327, 328 (Tex.1981). Because no findings of fact and conclusions of law were filed, we are required to uphold the trial court's judgment if it is based on any legal theory that is supported by the evidence. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984). In the absence of findings and conclusions, the judgment of the trial court implies all necessary fact findings in support of the judgment. *Id.*

In its first point of error, M.R.S. contends that the trial court erred in failing to enforce Houghton's oral covenant not to compete.

■ Houghton, Woolf, and Exchange Data assert that, because M.R.S. did not phrase its point of error in terms of "abuse of discretion," M.R.S. failed to present properly any issue for review by this Court. However, the Texas Supreme Court has recently held that briefing defects or irregularities should not be the basis of affirming or reversing the trial court's judgment or dismissing the appeal. *Inpetco, Inc. v. Texas Am. Bk.*, 729 S.W.2d 300 (Tex.1987).

The trial court held that the three-year-old oral covenant was unenforceable. M.R.S. contends that the statute of frauds does not preclude the enforcement of the oral covenant not to compete, although it generally precludes the enforcement of an oral agreement that is not to be performed within one year from the date of the making of the agreement. Tex.Bus. & Com. Code Ann. sec. 26.01(b)(6) (Vernon Supp. 1987). M.R.S. also contends that the possibility of Houghton's death within one year removes the contract from the statute. We disagree.

■ The terms of the oral agreement are not indefinite. The covenant provided for a period of three years in which Houghton could not compete with M.R.S. When an oral contract by its very terms extends beyond a year from the date of its making, the mere theoretical possibility of termination within a year because of death or other fortuitous event does not insulate it from the statute of frauds relating to agreements not to be performed within a year. *Chevalier v. Lane's, Inc.*, 147 Tex. 106, 213 S.W.2d 530 (1948). *Compare Gilliam v. Kouchoucos*, 161 Tex. 299, 340 S.W.2d 27 (1960) (which held an oral contract for employment for a period of 10 years was not taken out of the statute of frauds by a provision that it would terminate upon the death of the employee), and *Molder v. Southwestern Bell Tel. Co.*, 665 S.W.2d 175 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.) (which held an oral employment contract for permanent employment until retirement at age 65 made between an employer and an 18–year–old employee would fall under the statute of frauds and be unenforceable as being impossible to fulfill within one year from the date of its making).

■ M.R.S. alternatively asserts that the statute of frauds should not be applied

because it has fully performed its obligations under the "sales contract," and that such full performance consisted of the purchase of the two businesses and the employment of Houghton at $46,000 a year, plus expenses and an automobile. However, Houghton had no connection with one business, Verbatim Records, and testified without contradiction that he did not receive any proceeds from the sale of the second business and did not in fact own any interest in Eikon Corporation, the previous owner of M.R.S., at the time of the actual sale. Moreover, Houghton also alleged that M.R.S. refused to pay all of his expenses under the employment agreement. There was also no evidence that Houghton was paid his full annual salary before he was discharged.

Under these facts, there was a disputed fact issue as to whether there was full performance under the contract. Moreover, the prevailing view requires facts and circumstances *amounting to actual fraud* to justify equitable relief precluding enforcement of the statute of frauds. *Paschall v. Anderson*, 127 Tex. 251, 91 S.W.2d 1050, 1051 (1936, opinion adopted); *see also Chevalier v. Lane's, Inc.*, 213 S.W.2d 530, 533 (Tex.1948); *Mercer v. C.A. Roberts Co.*, 570 F.2d 1232, 1237 (5th Cir.1978). One such circumstance, justifying a departure from the statute of frauds, occurs when an employer pays an employee for the full term. *Chevalier*, 213 S.W.2d at 534. In the present case, M.R.S. did not pay Houghton for the full term and did not allege fraud, nor any other equitable circumstance, justifying the non-enforcement of the statute.

We conclude that the trial court did not abuse its discretion in refusing to enforce Houghton's oral covenant not to compete. Point of error one is overruled.

In its second point of error, M.R.S. asserts that the trial court erred in releasing Sheryl Woolf from the terms of her written covenant not to compete, which was ancillary both to the sale of her business and to her employment with M.R.S.

Woolf contends that her written covenant not to compete cannot be clearly categorized as either a covenant incident to the sale of a business or a post-employment covenant like the one considered by the Texas Supreme Court in *Hill v. Mobile Auto Trim, Inc.*, 725 S.W.2d 168 (1987). In *Hill*, the covenant could not be clearly classified as either. Hill purchased a franchise from Mobile but he had received specialized training in the business prior to his purchase. Hill agreed not to compete with Mobile after their business relationship terminated in exchange for the use of Mobile's name and accompanying goodwill. In the instant case, Woolf's covenant was incident both to the sale of her business and part of her employment contract.

*Hill* establishes the criteria that must be proven for a covenant to be deemed "reasonable." 725 S.W.2d at 170–71. First, the covenant must be necessary for the protection of the promisee (i.e., the promisee must have a legitimate interest in protecting business goodwill or trade secrets). Second, the covenant must not be oppressive to the promisor (i.e., the limitations as to time, territory, and activity must be reasonable). Third, the covenant must not be injurious to the public (i.e., not prevent competition or deprive the community of needed goods). Finally, the noncompetitive agreement should be enforced only if the promisee gives consideration for something of value. *Id.*

M.R.S. has a legitimate interest in protecting the business goodwill that it acquired by purchasing Verbatim Record Services from Woolf. Because the covenant was incident to the sale of a business, Woolf's promise not to compete with M.R.S. increased the value of the business to M.R.S. *See Hill*, 725 S.W.2d at 171. Without such an agreement, the diminished value of the business would lessen the likelihood that Woolf's business would be purchased. *Id.* The agreement was, therefore, supported by valuable consideration.

Moreover, the covenant is not injurious to the public and not oppressive to the promisor because she has specialized training in another field. Woolf voluntarily and knowingly gave up her right to compete in the medical records service business for a

limited time when she signed the employment contract containing the covenant and sold her business to M.R.S.

When such an established business is sold with its goodwill, and there is a reasonable and valid covenant not to compete, the damages are presumed to be irreparable if the covenant is breached, and the remedy at law is considered inadequate. *Daniel v. Goesl*, 161 Tex. 490, 341 S.W.2d 892 (1960). M.R.S. need not first show pecuniary damages nor an actual loss of customers, and injunctive relief can be given even where no actual damage has been shown. *Id.* at 896; *see also Seline v. Baker*, 536 S.W.2d 631 (Tex.Civ.App.—Houston [1st Dist.] 1976, no writ).

The Texas Supreme Court has recognized that covenants not to compete, incidental to the sale of a business, are permissible if the time and area restraints are "reasonable." *See Weatherford Oil Tool Co. v. Campbell*, 161 Tex. 310, 340 S.W.2d 950 (1960). More recently, in *Bergman v. Norris of Houston*, 734 S.W.2d 673, 674 (Tex.1987), the Texas Supreme Court held that non-competition covenants for barbers were unenforceable because they were engaged in a "common calling," but qualified its holding by stating, "there being no sale of a business or imparting of specialized knowledge or information involved."

Because the covenant in the instant case was incident to the sale of the business and its terms were in writing and were reasonable, injunctive relief should have been granted. We conclude that the trial court's failure to grant a temporary injunction restraining Woolf was an abuse of discretion.

Point of error two is sustained.

In its third point of error, M.R.S. contends that the trial court erred in refusing to enjoin the appellees from contacting the customers designated on customer lists allegedly "stolen" from M.R.S. by Houghton.

The documents containing the customers' names were prepared by Houghton during his employment with M.R.S., and Houghton took them upon termination of his employment. Houghton contends that he retained the documents with the full knowledge and permission of M.R.S. The trial court ordered the documents to be returned to M.R.S., but M.R.S. contends that the trial court erred in not enjoining Houghton from contacting customers on those lists.

Both parties agreed that the customers of these businesses are insurance defense firms, and that these firms are easily and readily identifiable from any number of legal directories. Moreover, once the medical records are filed with the court, they thereby become public records, and anyone could discover which customers do business with a particular medical records service.

Because the information is publicly available or readily ascertainable, the trial court did not abuse its discretion in refusing to enjoin the appellees from contacting those customers. *See Richardson v. Andrews*, 718 S.W.2d 833 (Tex.App.—Houston [1st Dist.] 1986, no writ).

Point of error three is overruled.

The interlocutory order is reversed as to Sheryl Woolf, and this cause is remanded to the trial court for further proceedings consistent with this opinion. In all other respects, the order is affirmed.