IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 03-1050
════════════
 
Alex Sheshunoff Management 
Services, L.P., Petitioner,
 
v.
 
Kenneth Johnson and Strunk 
& Associates, L.P., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued November 
10, 2004
 
 
Justice Willett delivered the opinion 
of the Court, in which Justice Hecht, 
Justice Brister, Justice Green, and Justice Johnson joined.
 
Chief Justice Jefferson filed a 
concurring opinion, in which Justice 
O’Neill and Justice Medina 
joined.
 
Justice Wainwright filed a concurring 
opinion.
 
 
In this case 
we revisit the Court’s 1994 decision in Light v. Centel Cellular Co.[1] and again consider the enforceability 
of covenants not to compete in the context of at-will employment. The question 
today is whether an at-will employee who signs a non-compete covenant is bound 
by that agreement if, at the time the agreement is made, the employer has no 
corresponding enforceable obligation. Under Light, the answer to that 
question was always “no.” Today we modify our holding in Light and hold 
that an at-will employee’s non-compete covenant becomes enforceable when the 
employer performs the promises it made in exchange for the covenant. In so 
holding, we disagree with language in Light stating that the Covenants 
Not to Compete Act[2] requires the agreement containing the 
covenant to be enforceable the instant the agreement is made.
I. Background
Petitioner 
Alex Sheshunoff Management Services, L.P. (ASM) provides consulting services to 
banks and other financial institutions. Respondent Kenneth Johnson began working 
for ASM in 1993 as an at-will employee. In September, 1997, ASM promoted Johnson 
to director of its “Affiliation Program,” a program designed to maintain 
relationships with clients and prospective clients. A few months after the 
promotion, ASM presented Johnson with an employment agreement (Agreement) 
containing a covenant not to compete. ASM informed Johnson that signing the 
agreement was a condition of continued employment. Johnson signed the Agreement 
in January 1998.
The Agreement 
was at-will in the sense that it had no fixed term of employment and stated that 
“[e]ither party may elect to terminate this Agreement at any time for any 
reason,” subject to employer and employee notice provisions. The employer notice 
provision stated that ASM would give notice of termination to Johnson (unless 
the termination stemmed from employee misconduct) but then stated that ASM could 
immediately terminate Johnson so long as ASM paid a specified fee to Johnson.[3]
The Agreement 
also stated:
 
To assist 
Employee in the performance of his/her duties, Employer agrees to provide to 
Employee, special training regarding Employer’s business methods and access to 
certain confidential and proprietary information and materials belonging to 
Employer, its affiliates, and to third parties, including but not limited to, 
customers and prospects of the Employer who have furnished such information and 
materials to Employer under obligations of confidentiality.
 
The Agreement 
then specified information that qualified as confidential information, and 
provided that the employee agreed to keep all such information strictly 
confidential.
The Agreement 
included a covenant not to compete, providing that for one year after his 
termination, Johnson would not provide consulting services to any ASM clients to 
whom Johnson had “provided fee based services in excess of 40 hours within the 
last year of employment,” and would not “solicit or aid any other party in 
soliciting any affiliation member or previously identified prospective client or 
affiliation member.”
The parties 
dispute whether the nature of the training and confidential information Johnson 
received after he signed the Agreement was different from the information and 
training he had previously received. However, there is no dispute that after the 
Agreement was signed Johnson received confidential information. ASM also paid 
for training from third parties that was provided to Johnson after he signed the 
Agreement. ASM was under no preexisting contractual obligation to provide such 
information and training.
In 2001, 
Johnson participated in confidential meetings regarding ASM’s plans to introduce 
a bank overdraft protection product. He requested and received an internal 
manual on this new product. The market leader for such products was Respondent 
Strunk & Associates, L.P. (Strunk). In early 2002, Strunk contacted Johnson 
about hiring him. ASM offered evidence that, after Strunk contacted Johnson, he 
continued to receive confidential information from ASM regarding its plans to 
offer the new overdraft product. In March 2002, Johnson told ASM that he was 
leaving to work for Strunk.
ASM sued 
Johnson, alleging breach of the covenant not to compete and seeking injunctive 
relief and damages. Strunk intervened. The court granted a temporary injunction. 
Strunk and Johnson then moved for summary judgment, arguing that the covenant 
was unenforceable as a matter of law. They argued that under footnote six of 
Light, 883 S.W.2d at 645 n.6 (discussed below), ASM’s promises to provide 
confidential information and specialized training were illusory at the time the 
agreement was made and the covenant was therefore unenforceable. The district 
court granted the summary judgment motions. The court denied Strunk’s request 
for attorney fees, however, and entered a final judgment.
The court of 
appeals affirmed. 124 S.W.3d 678. It held that under footnote six of 
Light, the covenant was unenforceable because the promises to provide 
specialized training and confidential information were illusory when the 
agreement was made and therefore did not comport with the Act’s requirement that 
the agreement be enforceable when it was made:
 
At the 
heart of the parties’ dispute is whether ASM’s promise to provide special 
training and access to confidential information was illusory. Under section 
15.50, the relevant inquiry is whether ASM’s promise was binding at the time 
that the agreement was made. . . . ASM’s promise to give Johnson access to 
training and confidential information in the future was illusory because ASM 
could have fired Johnson immediately after he signed the agreement and escaped 
its obligation to perform. . . . Thus, ASM’s acceptance of Johnson’s promise to 
maintain confidentiality by later providing confidential information created a 
unilateral contract but not an otherwise enforceable agreement at the time the 
agreement was made. See Light, 883 S.W.2d at 645 n.6.
  
124 S.W.3d at 
685, 687.
II. Discussion
The Covenants 
Not to Compete Act (Act) states:
 
[A] 
covenant not to compete is enforceable if it is ancillary to or part of an 
otherwise enforceable agreement at the time the agreement is made to the extent 
that it contains limitations as to time, geographical area, and scope of 
activity to be restrained that are reasonable and do not impose a greater 
restraint than is necessary to protect the goodwill or other business interest 
of the promisee.
 
Tex. Bus. & Com. Code § 
15.50(a).
A. “At the Time the Agreement Is Made”
1. Light’s Analysis
In 
Light, we analyzed the requirements for enforceability of a covenant not 
to compete under section 15.50. In that case, an employee (Light) who had held 
her job since 1985 signed an agreement in 1987 containing a covenant not to 
compete. 883 S.W.2d at 643. The agreement stated that the employer “agrees to 
provide the [employee] initial and on-going specialized training necessary to 
sell the mobile radio communications services [employer] offers.” Id. at 
646 n.8. It provided that “employment is terminable at the will of either 
[employee] or [employer].” Id. at 645-46 n.8.
We held that 
“otherwise enforceable” agreements under section 15.50(a) “can emanate from 
at-will employment so long as the consideration for any promise is not 
illusory.” Id. at 645. We concluded that the agreement contained, in 
addition to the covenant not to compete, three non-illusory promises: (1) the 
employer’s promise to provide initial specialized training; (2) the employee’s 
promise to provide fourteen days’ notice prior to termination; and (3) the 
employee’s promise to provide an inventory upon termination. Id. at 
645-46. We construed the employer obligation to provide initial training as not 
depending on whether the employee was still employed: “Even if Light had 
resigned or been fired after this agreement was executed, United would still 
have been required to provide the initial training.” Id. at 646.
We held that 
these promises were not sufficient to make the covenant enforceable under the 
Act. We held that section 15.50 requires the covenant to be “ancillary to or 
part of” the otherwise enforceable agreement, and that to meet this requirement, 
two conditions must be met: “(1) the consideration given by the employer in the 
otherwise enforceable agreement must give rise to the employer’s interest in 
restraining the employee from competing; and (2) the covenant must be designed 
to enforce the employee’s consideration or return promise in the otherwise 
enforceable agreement.” Id. at 647. We concluded that the non-illusory 
promises in the agreement did not satisfy these requirements because the 
covenant not to compete was not designed to enforce the employee’s promises to 
give notice and provide an inventory. Id. at 647 & n.15. We 
recognized that the agreement must give rise to an “interest worthy of 
protection” by a covenant not to compete, id. at 647 (quoting DeSantis 
v. Wackenhut Corp., 793 S.W.2d 670, 682 (Tex. 1990)), and that “business 
goodwill and confidential or proprietary information are examples of such worthy 
interests,” id. We stated that the employer’s promise to train the 
employee “might involve confidential or proprietary information,” id., 
and that a reciprocal promise by the employee not to disclose such confidential 
information would meet the requirement that the covenant be designed to enforce 
the employee’s consideration provided in the agreement, id. at 647 & 
n.14. However, the covenant in Light failed because “Light did not 
promise in the otherwise enforceable agreement to not disclose any of the 
confidential or proprietary information given to her by” her employer. 
Id. at 647-48.
We do not 
disturb the holding in Light. The covenant in that case was part of an 
agreement that contained mutual non-illusory promises and was an “otherwise 
enforceable agreement.” Id. at 646. The covenant was not enforceable, 
however, because it was “not designed to enforce any of Light’s return promises 
in the otherwise enforceable agreement.” Id. at 647. Unlike Johnson in 
the pending case, Light made no promise not to disclose confidential 
information. Under Light, for a covenant to be “ancillary to or part of” 
an enforceable agreement under section 15.50, “(1) the consideration given by 
the employer in the otherwise enforceable agreement must give rise to the 
employer’s interest in restraining the employee from competing; and (2) the 
covenant must be designed to enforce the employee’s consideration or return 
promise in the otherwise enforceable agreement.” Id. at 647.
In the 
pending case, ASM promised to disclose confidential information and to provide 
specialized training under the Agreement, and Johnson promised not to disclose 
confidential information. The covenant was ancillary to or part of the agreement 
under the two requirements of Light quoted immediately above. However, 
under other language in Light, the Agreement was not enforceable at the 
time it was made.
In footnote 
six of Light, we discussed section 15.50’s requirement that the covenant 
be “ancillary or part of an otherwise enforceable agreement at the time the 
agreement is made”:
 
If only 
one promise is illusory, a unilateral contract can still be formed; the 
non‑illusory promise can serve as an offer, which the promisor who made the 
illusory promise can accept by performance. For example, suppose an employee 
promises not to disclose an employer’s trade secrets and other proprietary 
information, if the employer gives the employee such specialized training and 
information during the employee’s employment. If the employee merely sought a 
promise to perform from the employer, such a promise would be illusory because 
the employer could fire the employee and escape the obligation to perform. If, 
however, the employer accepts the employee’s offer by performing, in other words 
by providing the training, a unilateral contract is created in which the 
employee is now bound by the employee’s promise. The fact that the employer was 
not bound to perform because he could have fired the employee is irrelevant; if 
he has performed, he has accepted the employee’s offer and created a binding 
unilateral contract. . . . Such a unilateral contract existed between Light and 
United as to Light’s compensation. But such unilateral contract, since it could 
be accepted only by future performance, could not support a covenant not to 
compete inasmuch as it was not an “otherwise enforceable agreement at the time 
the agreement is made” as required by § 15.50.
 
Id. at 
645 n.6 (citations omitted).
In the 
pending case, the court of appeals correctly held that under Light’s 
footnote six, the agreement was illusory insofar as it required ASM to provide 
confidential information and specialized training. Since ASM could fire Johnson 
after the agreement was signed, and before it provided any confidential 
information or specialized training, we have exactly the situation hypothesized 
in footnote six. Unlike the agreement in Light, the agreement in the 
pending case did not oblige ASM to provide initial training whether or not 
Johnson was still employed by ASM. The agreement made no such promise, but 
instead stated that ASM agreed to provide training and access to confidential 
information “[t]o assist Employee in the performance of his/her duties.” There 
was no promise to provide such training and access after the employee had been 
terminated. ASM argues that the contract was not illusory and was not an at-will 
contract at all because of the notice provisions in Agreement. Under the notice 
provision applicable to the employer, ASM could terminate Johnson immediately 
and without notice so long as it paid a specified sum to Johnson. The promises 
to provide confidential information and training to Johnson were therefore 
illusory at the time the agreement was executed. Under Light, “the 
consideration given by the employer in the otherwise enforceable agreement must 
give rise to the employer’s interest in restraining the employee from 
competing,” id. at 647, and if this particular consideration is never 
provided by the employer, the covenant not to compete cannot be enforced. Absent 
such consideration, the covenant is not “ancillary to or part of the otherwise 
enforceable agreement” under the Act as interpreted by Light. To hold 
otherwise would mean that an employer could enforce a covenant merely by 
promising to pay a sum of money to the employee in the agreement, a result 
inconsistent with Light’s requirements that the covenant must give rise 
to the employer’s interest in restraining the employee from competing and the 
covenant must be designed to enforce the employee’s consideration or return 
promise. A covenant not to compete is not designed to enforce a notice 
provision. Id. at 647 n.15. The court of appeals correctly held that 
under Light, “ASM’s non-illusory promise to give at least two weeks’ 
notice before terminating Johnson does not give rise to its interest in 
restraining Johnson from competing.” 124 S.W.3d at 688.
2. Today’s Departure From Light
We agree with 
Light’s recitation of basic contract law in footnote six that “[i]f only 
one promise is illusory, a unilateral contract can still be formed; the 
non‑illusory promise can serve as an offer, which the promisor who made the 
illusory promise can accept by performance.” Upon further review of the Act and 
its history, however, we disagree with footnote six insofar as it precludes a 
unilateral contract made enforceable by performance from ever complying with the 
Act because it was not enforceable at the time it was made.
At the 
outset, this language in Light was not essential to the holding in that 
case. Light held that the agreement in issue was not a unilateral 
contract but was an enforceable bilateral contract when made because, as the 
court construed the employer’s promise to provide training in that case, the 
employer had made a promise to provide initial training that was 
enforceable when made. “Even if Light had resigned or been fired after this 
agreement was executed, United would still have been required to provide the 
initial training.” Light, 883 S.W.2d at 646. As explained above, the 
fatal defect in the agreement in Light was not that it was unenforceable 
when made, but that there was no “ancillary” promise by the employee, such as a 
promise not to disclose confidential information, that the covenant not to 
compete was designed to enforce.
Revisiting 
the issue of what the clause “at the time the agreement is made” in the Act 
means, we conclude that we must disagree with Light’s view that a 
unilateral contract can never meet the requirements of the Act because such a 
contract is not immediately enforceable when made. Section 15.50 states that “a 
covenant not to compete is enforceable if it is ancillary to or part of an 
otherwise enforceable agreement at the time the agreement is made . . . .” 
Simply reading the text, the clause “at the time the agreement is made” can 
modify either “otherwise enforceable agreement” or “ancillary to or part of.” No 
amount of pure textual analysis can tell us unequivocally which preceding clause 
is modified. Light stated that the agreement must be enforceable at the 
time the agreement is made, and therefore concluded that “at the time the 
agreement is made” must modify “otherwise enforceable agreement.” We now 
conclude, contrary to Light, that the covenant need only be “ancillary to 
or part of” the agreement at the time the agreement is made. Accordingly, a 
unilateral contract formed when the employer performs a promise that was 
illusory when made can satisfy the requirements of the Act.
There is no 
sound reason why a unilateral contract made enforceable by performance should 
fail under the Act. We understand why the Legislature and the courts would not 
allow an employer to spring a non-compete covenant on an existing employee and 
enforce such a covenant absent new consideration from the employer. “[A]n 
agreement not to compete, like any other contract, must be supported by 
consideration.” DeSantis, 793 S.W.2d at 681 n.6. The Act, as we now read 
it, addresses this concern. The covenant cannot be a stand-alone promise from 
the employee lacking any new consideration from the employer. See, e.g., 
Martin v. Credit Prot. Ass’n, Inc., 793 S.W.2d 667, 669 (Tex. 1990) 
(holding employment agreement consisting entirely of a covenant not to compete 
unenforceable because the covenant “must be supported by valuable 
consideration”). But if, as in the pending case, the employer’s consideration is 
provided by performance and becomes non-illusory at that point, and the 
agreement in issue is otherwise enforceable under the Act, we see no reason to 
hold that the covenant fails.
3. The Act’s Legislative History
Given the 
indefiniteness of the phrase “at the time the agreement is made,” we have also 
examined the legislative history of the Covenants Not to Compete Act. 
Ordinarily, the truest manifestation of what legislators intended is what 
lawmakers enacted, the literal text they voted on. This enacted language is what 
constitutes the law, and when a statute’s words are unambiguous and yield a 
single inescapable interpretation, the judge’s inquiry is at an end. See 
McIntyre v. Ramirez, 109 S.W.3d 741, 745 (Tex. 2003). Wherever possible, we 
construe statutes as written, but where enacted language is nebulous, we may 
cautiously consult legislative history to help divine legislative intent.[4] See Helena Chem. Co. v. 
Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). In the present case, because the 
modifying clause “at the time the agreement is made” is imprecise and suggests 
two conflicting interpretations on the central issue before us, we consult the 
legislative history to help glean the statute’s fair and ordinary meaning. 
Nothing in the Act’s legislative history suggests a reading contrary to the one 
we adopt today. Indeed, the legislative materials suggest that the current 
wording of the Act was intended to cover covenants not to compete executed in 
the course of at-will employment of exactly the sort at issue in the pending 
case.
The Act 
originated in 1989 with Senate Bill 946. As originally filed, the bill 
provided:
 
Notwithstanding Section 15.05 
of this code, a covenant not to compete is enforceable to the extent that 
it:
(1) is 
ancillary to an otherwise enforceable agreement; and
(2) 
contains reasonable limitations as to time, geographical area, and scope of 
activity to be restrained that do not impose a greater restraint than is 
necessary to protect the goodwill or other business interest of the 
promisee.
 
Tex. S.B. 946, 
71st Leg., R.S. (1989) (original version of bill).
Before 
passage, an amendment was offered and adopted which added language to subsection 
(1), so that as passed this subsection stated: “(1) is ancillary to an otherwise 
enforceable agreement but, if the covenant not to compete is executed on a date 
other than the date on which the underlying agreement is executed, such covenant 
must be supported by independent valuable consideration.” Act of May 23, 1989, 
71st Leg., R.S., ch. 1193, §1, 1989 Tex. Gen. Laws 4852.
The original 
and amended language of the 1989 legislation do not suggest that the Legislature 
intended to exclude unilateral contracts that become enforceable when, as 
occurred in this case, the employer proceeds to perform his promises to convey 
confidential information and provide training. The amendment by its terms was 
intended to cover the situation where the covenant is signed after the original 
employment agreement but is nonetheless enforceable if supported by new 
consideration.
The Act was 
passed to expand the enforceability of covenants not to compete. We explained in 
Light that the Act was a response to decisions from this Court. 
Light, 883 S.W.2d at 643. A Senate bill analysis noted:
 
Recent 
Texas Supreme Court Cases, (notably Hill v. Mobil Auto Trim, Inc., 725 
S.W.2d 168 (Tex. 1987), and DeSantis v. Wackenhut Corp., 31 Tex. Sup. Ct. 
J. 616 (July 13, 1988)[, on rehearing, 793 S.W.2d 670 (Tex. 1990)]) 
however, have severely restricted the enforceablility of these covenants in 
franchise and employment settings and raised questions about their use in other 
previously acceptable circumstances.
 
Sen. Research Comm., Bill Analysis, 
Tex. S.B. 946, 71st Leg., R.S. (1989). A House bill analysis stated that 
Hill “overturned long-standing precedent,” and that the bill “would 
simply restore over 30 years of common law developed by Texas Courts and remove 
an impairment to economic development in the state.” House Research Org., Bill Analysis, 
Tex. S.B. 946, 71st Leg., R.S. (1989). See also Peat Marwick Main & Co. 
v. Haass, 818 S.W.2d 381, 388 (Tex. 1991) (noting that “the purpose of the 
Act was to return Texas’ law generally to the common-law as it existed prior to 
Hill”).
The Act was 
amended in 1993 in response to more court decisions. The legislative history 
indicates that the primary purposes of the amendment were to make clear that 
covenants not to compete were applicable to at-will employment situations and 
that the statute prevailed over contrary common law. A House bill analysis 
stated:
 
Texas 
courts have not consistently followed the requirements of Chapter 15. One case 
has implied that the common law on the subject remains applicable. Another case 
invalidated covenants not to compete in connection with “at will” employment 
contracts. . . . C.S.H.B. 7 clarifies the applicability of Chapter 15 and 
ensures that “at will” employment contracts are covered.[[5]] The bill further makes 
clear that the statutory requirements prevail over the common law.
 
House Comm. on Bus. & Indus., Bill 
Analysis, Tex. H.B. 7, 73d Leg., C.S. (1993). To that end, section 
15.51(b) of the Act was amended to make specific reference to at-will 
contracts,[6] and section 15.52 was added to provide 
that the Act preempts common law. Tex. 
Bus. & Com. Code §§ 15.51(b), 15.52.
The 1993 
amendment also rewrote section 15.50 of the Act, the critical provision for our 
purposes. Prior to the 1993 amendment, section 15.50 provided:
 
Notwithstanding Section 15.05 
of this code, a covenant not to compete is enforceable to the extent that 
it:
(1) is 
ancillary to an otherwise enforceable agreement but, if the covenant not to 
compete is executed on a date other than the date on which the underlying 
agreement is executed, such covenant must be supported by independent valuable 
consideration; and
(2) 
contains reasonable limitations as to time, geographical area, and scope of 
activity to be restrained that do not impose a greater restraint than is 
necessary to protect the goodwill or other business interest of the 
promisee.
 
Act of May 23, 
1989, 71st Leg., R.S., ch. 1193, §1, 1989 Tex. Gen. Laws 4852. The 1993 
amendment to this provision was originally introduced in a bill that 
provided:
 
(a) 
Notwithstanding Section 15.05 of this code, a covenant not to compete is 
enforceable to the extent that it:
(1) is 
ancillary to an otherwise valid transaction or relationship but, if the covenant 
not to compete is executed on a date other than the date on which the 
transaction occurs or the relationship begins, such covenant must be supported 
by independent valuable consideration; and
(2) 
contains reasonable limitations as to time, geographical area, and scope of 
activity to be restrained that do not impose a greater restraint than is 
necessary to protect the goodwill or other business interest of the 
promisee.
 
Tex. H.B. 7, 
73d Leg., R.S. (1993) (original version of bill). A substituted bill was 
submitted that became law and provided:
 
(a) 
Notwithstanding Section 15.05 of this code, a covenant not to compete is 
enforceable if it is ancillary to or part of an otherwise enforceable agreement 
at the time the agreement is made to the extent that it contains limitations as 
to time, geographical area, and scope of activity to be restrained that are 
reasonable and do not impose a greater restraint than is necessary to protect 
the goodwill or other business interest of the promisee.
 
Act of May 29, 
1993, 73d Leg., ch. 965, §1, 1993 Tex. Gen. Laws 4201. For the first time, the 
clause “at the time the agreement is made” appears in the statute.
The reason 
that the language of section 15.50 was changed in 1993 from “otherwise 
enforceable agreement” to “otherwise valid transaction or relationship” and then 
back to “otherwise enforceable agreement” is unclear, but apparently the new 
reference to “at the time the agreement is made” simply retained the notion that 
a covenant not to compete could be signed after the employment relationship 
began so long as the covenant is supported by new consideration in an 
enforceable contract. The House bill analysis states that the change “describes 
applicability of the Act in terms of a covenant which is part of an otherwise 
‘enforceable agreement’ instead of a ‘valid transaction or relationship.’ The 
substitute deletes the need for independent consideration.”
Cumulatively, 
this legislative history indicates that (1) in 1989 and 1993 the Legislature 
wanted to expand the enforceability of covenants not to compete beyond that 
which the courts had allowed, (2) in 1989 the Legislature specifically wanted to 
ensure that covenants could be signed after the employment relationship began so 
long as the agreement containing the covenant was supported by new 
consideration, and (3) in 1993 the Legislature specifically wanted to make clear 
that covenants not to compete in the at-will employment context were 
enforceable. As to this last purpose, the 1993 amendment likely deleted the 
reference in section 15.50 to “the date on which the underlying agreement is 
executed” because such a reference might suggest that at-will arrangements are 
not covered by the statute, as there is no underlying or original executed 
employment agreement when the employment is at will.
As best we 
can tell, the language in the current version of the Act making reference to the 
agreement “at the time the agreement is made” was included in the 1993 amendment 
to maintain the rule, recognized in the 1989 version of the Act, that a covenant 
could be signed after the date that employment began so long as the new 
agreement was supported by independent consideration. This 
language was not intended to impose a new requirement that the agreement 
containing the covenant must be enforceable the instant it is made. There is no 
indication in the legislative history of the 1993 amendment of an intent to 
reduce the enforceability of covenants not to compete; all of the legislative 
history is to the contrary.
Moreover, the 
legislative history of the 1993 amendment indicates that one of its purposes was 
to make clear that at-will employment relationships can be the subject of a 
covenant not to compete. In this context, we think the typical arrangement would 
be similar to the covenant in the pending case. The employee had an at-will 
arrangement, and he signed a covenant not to compete as part of an agreement in 
which the employer promised to provide confidential information and specialized 
training and the employee promised not to reveal confidential information. In 
this typical arrangement, the employer’s promise is prospective and becomes 
enforceable only after the employer provides such confidential information or 
training and a unilateral contract results. If “at the time the agreement is 
made” in section 15.50 means that the agreement must be enforceable the instant 
it is made, as Light’s footnote six requires, then most covenants not to 
compete executed by employees with at-will employment will be unenforceable. 
Only the peculiar agreement, such as the one at issue in Light itself,[7] where the employer promises to provide 
confidential information or training even if the employee has been fired or has 
quit, would be covered by the Act. Such a reading would take language from the 
1993 amendment, intended to expand the reach of the Act to cover at-will 
employment, and use that language to restrict the reach of the Act in 
this context.
4. The Act Applies to Unilateral Contracts
For these 
reasons, we hold that a covenant not to compete is not unenforceable under the 
Covenants Not to Compete Act solely because the employer’s promise is executory 
when made. If the agreement becomes enforceable after the agreement is made 
because the employer performs his promise under the agreement and a unilateral 
contract is formed, the covenant is enforceable if all other requirements under 
the Act are met. In the pending case, these other requirements were met and, by 
the time Johnson left ASM, the agreement had become an enforceable unilateral 
contract because ASM had provided confidential information and specialized 
training as promised to Johnson, and Johnson had promised in return to preserve 
the confidences of his employer.
We also take 
this opportunity to observe that section 15.50(a) does not ground the 
enforceability of a covenant not to compete on the overly technical disputes 
that our opinion in Light seems to have engendered over whether a 
covenant is ancillary to an otherwise enforceable agreement. Rather, the 
statute’s core inquiry is whether the covenant “contains limitations as to time, 
geographical area, and scope of activity to be restrained that are reasonable 
and do not impose a greater restraint than is necessary to protect the goodwill 
or other business interest of the promisee.” Tex. Bus. & Com. Code § 15.50(a). 
Concerns that have driven disputes over whether a covenant is ancillary to an 
otherwise enforceable agreement—such as the amount of information an employee 
has received, its importance, its true degree of confidentiality, and the time 
period over which it is received—are better addressed in determining whether and 
to what extent a restraint on competition is justified.[8] We did not intend in Light to 
divert attention from the central focus of section 15.50(a). To the extent our 
opinion caused such a diversion, we correct it today.
B. Reasonableness of the Covenant
Johnson and 
Strunk also contended in their motions for summary judgment, as they do here, 
that the covenant not to compete was unreasonable. The court of appeals did not 
reach this issue. The covenant in the parties’ employment agreement provided in 
pertinent part:
 
(a)        In consideration 
of the training and access to Confidential Information provided by Employer, and 
so as to enforce Employee’s agreement regarding such Confidential Information 
. . . , Employee agrees that while employed by Employer, and for 
a period of one (1) year following the termination of Employee’s employment for 
any reason, Employee will not
 
(i)         directly 
or indirectly, as an owner, employee, independent contractor or otherwise, 
provide consulting services to banks, savings and loans or other financial 
institutions where the Employee has provided fee based services in excess of 40 
hours within the last year of employment, or with which Employee has conducted 
significant sales activity, including, but not limited to, more than one sales 
call, preparation of a sales proposal and actual sales, within the last year of 
employment. This restriction applies regardless of geographic location, it being 
acknowledged by the parties that Employer’s clients are not confined to a 
particular geographic area;
 
(ii)        solicit or aid 
any other party in soliciting any affiliation member or previously identified 
prospective client or affiliation member; or
 
(iii)       solicit or aid any 
other party in soliciting for employment any then-current employee of 
Employer.
 
(b)        Employee 
understands and acknowledges that Employer has made substantial investments to 
develop its business interests and goodwill, and to provide special training to 
Employee for the performance of Employee’s duties under this Agreement. Employee 
agrees that the limitations as to time, geographical area, and scope of activity 
to be restrained contained in this Paragraph 6 are reasonable and are not 
greater than necessary to protect the goodwill or other business interests of 
Employer. Employee further agrees that such investments are worthy of 
protection, and that Employer’s need for the protection afforded by this 
Paragraph 6 is greater than any hardship Employee might experience by complying 
with its terms.
 
Johnson 
argues that the covenant is overbroad because:
 
$          
its restriction on his solicitation of certain of ASM’s prospective clients and 
“affiliation members” is unrelated to any training or confidential information 
ASM provided Johnson after he signed the employment agreement;
 
$          
ASM’s protection of its goodwill is unrelated to any such 
information;
 
$          
there is no basis for restricting Johnson from calling on ASM’s clients of whom 
he was aware before signing the employment agreement.
 
We disagree. 
With Johnson’s help, as Director of Affiliation, ASM continued to develop 
clients for four years after the employment agreement was signed. Johnson helped 
develop ASM’s goodwill and could have tried to capitalize on it unfairly after 
going to Strunk. Johnson was even privy to ASM’s development of a product to 
compete with Strunk. Although ASM had given Johnson access to the same marketing 
information without a covenant not to compete, nothing precluded ASM from 
seeking the greater protection of a covenant when it did. The summary judgment 
record shows that Johnson’s covenant would have precluded him from calling on 
821 ASM clients for one year. When Johnson began work with Strunk, he agreed he 
would not sell an overdraft protection product, not just to Strunk’s customers, 
but to anyone in the industry, and not for one year, but for two years after 
leaving Strunk’s employment. Johnson testified that his covenant with Strunk was 
reasonable, just as he admitted in his employment agreement that his covenant 
with ASM was reasonable.
We conclude 
that Johnson’s covenant with ASM was reasonable under section 15.50(a). Johnson 
and Strunk were therefore not entitled to summary judgment on their contrary 
argument. Since the covenant was enforceable, Johnson and Strunk were not 
entitled to recover attorney fees. ASM did not move for summary judgment on the 
enforceability of Johnson’s covenant; thus, the case must be remanded to the 
trial court. Obviously, the one-year period during which Johnson’s activities 
were to be restricted has passed, and ASM is no longer entitled to the 
injunctive relief it sought, and for a while obtained, at the outset. But ASM’s 
claim for damages for breach of the covenant remains pending.
III. Conclusion
We reverse 
the judgment of the court of appeals that ASM take nothing against Johnson and 
Strunk, affirm its judgment that Strunk not recover attorney fees against ASM, 
and remand the case to the trial court for further proceedings.
 
_______________________________________
Don R. 
Willett
Justice
 
Opinion delivered: October 20, 
2006










[1] 883 S.W.2d 642 (Tex. 1994).

[2] Tex. Bus. & 
Com. Code §§ 15.50–15.52.

[3] The Agreement provided:
 
Employer agrees that if it terminates this Agreement for 
any reason other than misconduct on the part of Employee (in which case no 
notice or pay in lieu thereof is required), it will give Employee at least two 
(2) weeks’ advance notice of such termination, plus one (1) additional week of 
notice per year of service up to eight (8) years of service. If Employer fails 
to give Employee such notice, Employer will pay Employee an amount equivalent to 
the same number of weeks’ salary, less applicable deductions and 
withholdings.

[4] We say “cautiously” because while the Code Construction 
Act expressly authorizes courts to use a range of construction aids, including 
legislative history, Tex. Gov’t 
Code § 311.023, we are mindful that over-reliance on secondary materials 
should be avoided, particularly where a statute’s language is clear. If the text 
is unambiguous, we must take the Legislature at its word and not rummage around 
in legislative minutiae. 

[5] The at-will employment case the 1993 amendment sought 
to overrule was surely Travel Masters, Inc. v. Star Tours, Inc., 827 
S.W.2d 830 (1991), which held that “a covenant not to compete executed either at 
the inception of or during the employment-at-will relationship cannot be 
ancillary to an otherwise enforceable agreement and is unenforceable as a matter 
of law.” Id. at 833.

[6] Section 15.51(b) now provides in part: “If the primary 
purpose of the agreement to which the covenant is ancillary is to obligate the 
promisor to render personal services, for a term or at will, the promisee 
has the burden of establishing that the covenant meets the criteria specified by 
Section 15.50 of this code.” (Emphasis added). The clause “for a term or at 
will” was added by the 1993 amendment.

[7] As explained above, the employer in Light was 
required to provide “initial . . . specialized training” whether or not the 
employee “had resigned or been fired after this agreement was executed.” 
Light, 883 S.W.2d at 646.

[8] In this regard, Chief Justice Jefferson’s concurrence 
is concerned that an employer might try to pull a fast one by withholding 
confidential information up until the employee announces his intent to leave, 
and then quickly sharing the secret information to prevent the employee from 
working for a competitor. ___S.W.3d at___. Today’s decision should not stoke 
such worries or embolden such “one-sided gamesmanship,” ___S.W.3d at___, as the 
concurrence terms it. While it seems unlikely that a rational company would rush 
to disclose valuable trade secrets as a departing employee walks out the door, 
in such a case the court could, under the Act and the facts, deem such a 
last-minute gambit “unreasonable” and unnecessary to protect the employer’s 
business interests under section 15.50(a). Further, it is axiomatic that 
injunctive relief is an equitable remedy, subject to equitable principles, 
see, e.g., In re Gamble, 71 S.W.3d 313, 317 (Tex. 2002), and the 
court could easily conclude that the employer’s unclean hands in such 
circumstances renders it ineligible for injunctive 
relief.